IN THE MATTER OF: PATRICIA ECKARD, A MINOR CHILD

No. COA00-655-2

(Filed 5 February 2002)

**Termination of Parental Rights— cessation of reunification efforts—order remanded**

An order stopping reunification efforts between a parent and a child in foster care was not supported by the evidence, did not consider changed circumstances involving the identification of

the natural father, and did not recognize that the purpose of the Juvenile Code is return of juveniles to their homes. N.C.G.S. §§ 7B-907(b), 7B-100(4).

Appeal by respondent mother from order ceasing reunification efforts entered 17 December 1999 by Judge Nancy Einstein in Catawba County District Court. This case was originally heard in the Court of Appeals 28 March 2001 and we issued an opinion reported at 144 N.C. App. 187, 547 S.E.2d 835 (2001). The Guardian Ad Litem's Petition for Discretionary Review pursuant to North Carolina General Statutes § 7A-31 was allowed by the Supreme Court. By order dated 9 November 2001, our Supreme Court vacated the opinion of this Court and remanded the case to the Court of Appeals for reconsideration. *In re Eckard*, 354 N.C. 362, 556 S.E.2d 299 (2001).

*M. Victoria Jayne, for Guardian Ad Litem, petitioner-appellee.*

*Nathaniel J. Poovey, for respondent-appellant.*

TYSON, Judge.

This case has been remanded for our reconsideration in light of our Supreme Court's *per curiam* holdings in *In the Matter of Dula*, 354 N.C. 356, 554 S.E.2d 336 (2001) and *In the Matter of Pope*, 354 N.C. 359, 554 S.E.2d 644 (2001). We briefly review the facts of this case.

On 14 April 1999, upon returning from the grocery store, respondent mother, Angela Eckard, noticed bruises and cuts on her daughter, Patricia, and blood on her boyfriend. Angela immediately took Patricia to Catawba Memorial Hospital where Patricia was diagnosed as having suffered skull fractures and exhibited numerous bruises over her body.

On 21 April 1999, a nonsecure custody order was entered that removed Patricia, then twenty-two months old, from her mother's home and placed her in foster care. Catawba County Department of Social Services ("DSS") filed a petition alleging abuse and neglect. Angela consented to an adjudication which found that Patricia was an abused, neglected and dependent juvenile on 25 May 1999.

A review hearing was held on 24 August 1999 before Judge Einstein at which time DSS informed the court that Angela "has done

everything requested by the Department of Social Services," and "the permanent plan for Patricia Eckard is reunification with her mother, Angela Eckard." The trial court ordered unsupervised visitation.

On 14 December 1999, the permanency planning hearing was held. In its order of 17 December 1999, the trial court found that reunification was not in the best interests of the minor child. The trial court further ordered that custody of Patricia remain with DSS, with placement to continue in the foster home, and that adoption with the foster parents was the permanent plan. Respondent mother appealed. DSS is not a party to this appeal.

On appeal, we held that the evidence presented at trial did not support the trial court's findings and order ceasing reunification efforts, pursuant to N.C. Gen. Stat. § 7B-507(b) (1999) and *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) (our Supreme Court held that "[t]he trial court must also consider evidence of changed conditions in light of evidence of prior neglect"). Upon such reconsideration and for the reasons set forth below, we reverse the trial court's order and remand this case to the trial court for further proceedings.

A trial court is required to conduct a permanency planning hearing in every case where custody of a child has been removed from a parent. N.C. Gen. Stat. § 7B-907(a) (1999). The purpose of the hearing is to "develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." *Id.* The trial court shall consider "information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid in the court's review." N.C. Gen. Stat. § 7B-907(b) (1999). The trial court has the authority to cease reunification efforts pursuant to N.C.G.S. § 7B-507(b). *See* N.C. Gen. Stat. § 7B-907(c) (1999).

The purposes and policies of the Juvenile Code are:

(1) To provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents;

(2) To develop a disposition in each juvenile case that reflects consideration of the facts, the needs and limitations of the juvenile, and the strengths and weaknesses of the family.

(3) To provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence; and

(4) To provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents.

N.C. Gen. Stat. § 7B-100 (1999). We set out the purposes and policies in this opinion because we conclude that the order entered at the permanency planning hearing: (1) is not supported by the evidence, distinguishing this case from *Dula* and *Pope*, (2) did not consider evidence of changed conditions, (3) does not comply with the statutory requirements set out in N.C.G.S. § 7B-907(b), and (4) is inconsistent with the purposes and policies of the Juvenile Code.

### I. Order is Not Supported by the Evidence

In the present case, the trial court made the statutory findings that "efforts to reunify the minor child with her mother would be inconsistent with the child's health, safety, and need for a safe, permanent home within a reasonable period of time" and "not in the best interests of the child." *See* N.C. Gen. Stat. § 7B-507(b)(1) (1999). We previously concluded that the evidence presented did not support these findings. *See In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991) (trial court's findings of fact are conclusive on appeal if supported by any competent evidence).

In *Dula*, the minor child was removed from the mother's custody in May 1998, after an allegation that the child was abused. *In re Dula*, 143 N.C. App. 16, 17, 544 S.E.2d 591, 592 (2001). Twenty months later, January 2000, the trial court held its second permanency planning hearing and ordered that reunification efforts cease. *Id.* The evidence showed that: (1) the child suffered a broken leg while in the care and custody of the respondent mother, (2) respondent mother failed to comply with the case plan by refusing to offer a consistent explanation for the child's injuries, and (3) respondent mother would not accept any responsibility for the injuries to the child. *Id.* at 24-25, 544 S.E.2d at 596-97.

In *Pope*, the minor child was removed from the mother's custody in February 1998, after an allegation that the child was abused and neglected. *In re Pope*, 144 N.C. App. 32, 33, 547 S.E.2d 153, 154

(2001). Sixteen months later, June 1999, DSS filed a petition to terminate the parental rights and the trial court ordered termination based on N.C.G.S. §§ 7B-1111(a)(1) (neglect), 7B-1111(a)(2) (willfully left in foster care), and 7B-1111(a)(3) (willfully failed to pay support). *Id.* at 36, 547 S.E.2d at 156. The trial court found that: (1) the child was starving to death while in the care and custody of the respondent mother, (2) respondent mother had made no progress even with the services provided by DSS and continued to show a lack of understanding of how to care for the child, (3) respondent mother lacked any understanding of the seriousness of the child's condition in February 1998, (4) respondent mother continued to deny that she had done anything to place the child at risk, and (5) respondent mother suffered from a personality disorder with seriously disturbed thinking which is difficult to change, and without change, there would be a high risk of continued neglect. *Id.* at 33-38, 547 S.E.2d at 154-57.

We find this case distinguishable from *Dula* and *Pope*. After less than eight months of placement outside the home, the trial court ordered that reunification efforts cease. The undisputed evidence showed that: (1) the injuries to Patricia occurred while she was in the custody and care of another; (2) respondent mother terminated her relationship with the other person and has established and maintained her own dwelling; (3) despite respondent mother's low I.Q., she has no severe mental health issues that would interfere with her ability to parent; (4) respondent mother understands that her poor choices led to the abuse of the child and that the solution is to proceed more slowly before advancing to a live-in relationship; (5) respondent mother has grown and matured to a level as to not be a danger to Patricia; (6) respondent mother continues to remain employed, pay child support, and visit her child regularly; (7) respondent mother has done everything requested by DSS, is following her case plan, and is exceeding minimal standards of care; (8) respondent mother accepts responsibility on her own part for not protecting Patricia; and (9) DSS recommends that the permanent plan for Patricia be reunification with respondent mother.

The trial court's findings and conclusions were based solely on the report submitted by the Guardian ad Litem and testimony by the foster parents that they had established a close relationship with Patricia, that she calls them "momma" and "daddy, and that they expected to adopt Patricia despite the stated goal of reunification with her natural mother. The uncontradicted testimony and evidence

from the court-ordered psychologist, DSS referred psychologist, DSS nurturing program coordinator, DSS social worker, and respondent mother does not support the findings and conclusions of the trial court. For these reasons, we find this case factually and legally distinguishable from *Dula* and *Pope*.

## II.  Evidence of Changed Conditions

N.C.G.S. § 7B-907(b) requires the trial court to consider "information from the parent, the juvenile, the guardian, any foster parent, relative or preadoptive parent providing care for the child, the custodian or agency with custody, the guardian ad litem, and any other person or agency which will aid in the court's review." The trial court must also consider any evidence of changed conditions. *See Ballard*, 311 N.C. at 715, 319 S.E.2d at 232 (in proceedings to terminate parental rights the trial court must consider any evidence of changed conditions in light of the evidence of prior neglect). We conclude that the trial court failed to consider the evidence of changed conditions presented at the permanency planning hearing.

First, there was overwhelming evidence of changed conditions with respect to Angela Eckard which we previously held did not support the findings and conclusions by the trial court in its order ceasing reunification efforts.

Second, in August 1999, the father of Patricia was identified for the first time through paternity testing. The evidence showed that the father, William Sanford, Jr., had begun visitation and establishing a bond with Patricia. The trial court found that:

he [Mr. Sanford] appears to be a decent person who makes a late appearance into this case . . . . He should have been considered as a placement for Tricia and should have been interviewed by both the Guardian ad Litem and the Department as soon as testing showed him to be the father. However, in lieu of new statutory guidelines to move these cases to permanency, especially when particularly young children are involved, the Court believes it is too late to include Mr. Sanford in any permanency planning except for visitation with his daughter.

The trial court dismissed the changed conditions in the identification, visitation, and bonding of Patricia with her natural father because he "makes a late appearance."

### III.  Order Does Not Comply with the Statute

Additionally, we conclude that the trial court did not comply with the statutory requirements of N.C.G.S. § 7B-907(b). This statute reads in pertinent part:

> At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:

> (2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established . . . .

N.C. Gen. Stat. § 7B-907(b)(2) (1999). The trial court dismissed the father as a potential candidate for custody because of his "late appearance." The trial court found that "Tricia is too bonded to her current placement to risk her young and fragile well being at this time." We hold that according to the statute, the trial court should have considered whether the natural father was a candidate for custody of Patricia and have required interviews by the Guardian ad Litem and DSS to further investigate Patricia's placement with her other natural parent.

### IV.  Purposes and Policies of the Juvenile Code

We have recognized the constitutional protection afforded to family relationships. *See In re Webb*, 70 N.C. App. 345, 350, 320 S.E.2d 306, 309 (1984) ("[T]he Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." (quoting *Moore v. City of East Cleveland*, 431 U.S. 494, 503-04, 52 L. Ed. 2d 531, 540 (1977)). The purposes and policies of the Juvenile Code recited under N.C.G.S. § 7B-100 are applicable to permanency planning hearings.

The trial court's findings and conclusions were not supported by the evidence, did not consider changed conditions, and did not recognize that the purpose of the Juvenile Code is "return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." *See* N.C. Gen. Stat. § 7B-100(4). The evidence at the permanency planning hearing supported continuing reunification efforts with Angela and possible custody with Patricia's father, Mr. Sanford. This is consistent with the overriding purposes of respecting family autonomy and protecting

the constitutional rights of the juveniles and parents. *See* N.C. Gen. Stat. §§ 7B-100(1) and (3).

We hold that the order ceasing reunification efforts is not consistent with the purposes and policies of the statute, did not comply with the statute, did not consider changed conditions, and was not supported by the evidence of record. We reverse the order of the trial court and remand for further proceedings to enable DSS to carry out its statutory duties seeking reunification and to determine custody of Patricia. We further hold that, nothing else appearing to the contrary, the time elapsed during the pendency of this appeal shall not affect further proceedings in the trial court.

Reversed and remanded.

Judges WALKER and HUNTER concur.