**IN RE LEDBETTER**

[158 N.C. App. 281 (2003)]

IN THE MATTER OF: PATRICK LEDBETTER, DOB: 8-22-1992, MINOR CHILD

THE BUNCOMBE COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER v.
PAMELA LEDBETTER, RICHARD HOLLOWAY, RESPONDENTS

No. COA02-650

(Filed 3 June 2003)

**Child Abuse and Neglect— reunification efforts—findings of fact**

The trial court erred in a permanency planning hearing regarding child neglect by ordering the cessation of reunification efforts between respondent mother and her child based on insufficient findings of fact, because: (1) none of the trial court's findings address the requirement in N.C.G.S. § 7B-907(b)(1) that the court make findings regarding whether it is possible for the juvenile to be returned home within the next six months; (2) findings that respondent was held in contempt of court for violating visitation restrictions and that she refused to pay child support do not alone explain why it is not in the juvenile's best interests to return home; and (3) the trial court did not address the requirement of N.C.G.S. § 7B-907(b)(4) that the court explain why the child was being transferred from his foster parents to his father.

Appeal by respondent Pamela Ledbetter from an order entered 11 December 2001 by Judge Marvin Pope in Buncombe County District Court. Heard in the Court of Appeals 24 March 2003.

*John C. Adams, for petitioner-appellee.*

*Judy N. Rudolph, for Guardian ad Litem-appellee Kim Teich. Lynne Rupp, for respondent-appellant.*

CALABRIA, Judge.

Pamela Ledbetter ("respondent") appeals the 11 December 2001 order placing her child, Patrick ("the child"), in the custody of his father, Richard Holloway ("the father") with the Buncombe County Department of Social Services ("DSS" or "petitioner") providing protective supervision, and respondent being entitled to supervised visitation.

On 27 July 2000, DSS filed a petition alleging the child was a neglected juvenile. The petition explained: in February 2000, DSS substantiated that respondent used inappropriate discipline on the

child's sibling; respondent refused to cooperate with petitioner, and although she received some services, she "still has difficulty in parenting her children[;]" on 17 July 2000, respondent was arrested for assaulting and threatening to kill the child's sibling; on 18 July 2000, respondent agreed to have the child placed with her friend Melanie Johnson ("Johnson") pending the outcome of psychological evaluations. A hearing on the petition was held 23 October 2000. On 3 January 2001, the order was filed which adjudicated the child neglected and found it was in his best interests to remain in the custody of Johnson with DSS providing protective supervision, unsupervised visitation with his father, and supervised visitation with respondent. The court ordered respondent to transfer all child support and social security payments to Johnson.

Thereafter, the court conducted review hearings and entered orders approximately every two months. Five psychological evaluations revealed respondent suffers no serious psychopathy. In a letter to the trial court in June 2001, a psychologist for the area mental health agency advised "that Ms. Ledbetter's issues with the Department of Social Services be addressed through some other avenue than having her seek mental health treatment. Providing treatment to a patient without psychopathology would not be ethical and would not be fruitful." However, the child remained with Johnson and continued to have supervised visitation with his mother and unsupervised visitation with his father.

Two issues were repeatedly addressed in the court's review orders: (1) the child's encopresis, a disorder which causes him to soil himself; and (2) the mother's difficulty abiding by court orders.

The child has suffered the effects of encopresis since 1997. A medical examination, in the Fall of 2000, revealed no medical basis for the child's encopresis, but rather the doctor "believe[d] it is a result of fear and an emotional problem." The incidences of encopresis were documented to increase surrounding visitation between the child and his mother and "with any sort of stress or change in routine." A DSS report from July 2001, noted: "[the child's] doctor has reported [the child] is experiencing moderately severe anxiety reactions to his visits with his mother."

Respondent did not comply with court orders. First, although, in the 3 January 2001 order and each order thereafter, respondent was ordered to transfer all child support and social security payments to

IN RE LEDBETTER

[158 N.C. App. 281 (2003)]

Johnson, respondent never transferred the payments. The court found as fact that despite the court orders to the contrary, "[respondent] believes she does not owe said money to [the Johnsons]." Second, from a hearing held 3 and 7 August 2001, and the subsequent order filed 10 September 2001, the court, due to reoccurring problems with the respondent's visitation, ordered supervised visitation occur only on the following conditions: "[respondent] will not bring anyone with her to the visits, [respondent] will arrive for the visits fifteen minutes after the Johnson[]s have delivered the child for the visits, and [respondent] will stay a minimum of 1,000 feet away from [the Johnsons]." Despite these clear directives, respondent was found in contempt of court for arriving early to visitation, and violating a court order by parking two spaces away from Johnson. Although respondent apparently did not request their attendance, two of respondent's former witnesses were present at DSS on the day she violated the court order. For these actions, the court found respondent in contempt at a hearing on 16 November 2001, in an order filed 11 December 2001. Sentencing was suspended pending compliance with the court's directives with respect to visitation.

Following the contempt hearing, the court held the permanency planning and review hearing from which respondent appeals. The court found respondent had repeatedly violated court orders, while the father was "in full compliance with prior Court Orders." DSS recommended the child be placed with his father and the case be closed. The court ordered the child be placed with his father, finding as fact that despite DSS making "reasonable efforts to return the minor child to the home, . . . returning to the home is no longer the best plan for the minor child." The court, however, did not order the case closed. The court ordered DSS to continue "providing protective supervision" and that supervised visitation between the child and respondent continue, including specific provisions for visitation during the upcoming Christmas holiday. Respondent appeals.

Respondent asserts the trial court erred ordering the cessation of reunification efforts because there was not sufficient evidence to support this finding thereby violating N.C. Gen. Stat. § 7B-907(b).

I. Sufficiency of the Findings

Respondent asserts the trial court erred by entering the 11 December 2001 order without making the requisite findings of fact as required by N.C. Gen. Stat. § 7B-907.

First, the *Guardian ad Litem* argues the order was not a permanency planning order pursuant to N.C. Gen. Stat. § 7B-907, but rather was a standard review hearing pursuant to N.C. Gen. Stat. § 7B-906 and, therefore, this Court should look to § 7B-906 in considering the sufficiency of the findings of fact. While the order is not designated a permanency planning order, Judge Pope repeatedly referred to the hearing as a permanency planning hearing. Moreover, both DSS and respondent agree with Judge Pope that the hearing was a permanency planning hearing, and the order must comply with N.C. Gen. Stat. § 7B-907. Accordingly, we address respondent's argument.

At a permanency planning hearing, the court shall consider information from any "person or agency which will aid" its review, and:

At the conclusion of the hearing, if the juvenile is not returned home, the court shall consider the following criteria and make written findings regarding those that are relevant:

(1) Whether it is possible for the juvenile to be returned home immediately or within the next six months, and if not, why it is not in the juvenile's best interests to return home;

(2) Where the juvenile's return home is unlikely within six months, whether legal guardianship or custody with a relative or some other suitable person should be established, and if so, the rights and responsibilities which should remain with the parents;

(3) Where the juvenile's return home is unlikely within six months, whether adoption should be pursued and if so, any barriers to the juvenile's adoption;

(4) Where the juvenile's return home is unlikely within six months, whether the juvenile should remain in the current placement or be placed in another permanent living arrangement and why;

(5) Whether the county department of social services has since the initial permanency plan hearing made reasonable efforts to implement the permanent plan for the juvenile;

(6) Any other criteria the court deems necessary.

N.C. Gen. Stat. § 7B-907(b) (2001). Moreover, "the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(c) (2001).

In the case at bar, the trial court made the following findings:

4. That immediately prior to this Review Hearing . . . [the court] found as fact, and adjudicated as such, that [respondent] was in willful and intentional contempt of this Court . . . .

5. That, pursuant to prior Court Orders, [respondent] was to pay [child support to the Johnsons] . . . [t]o date, no money has been paid . . . .

8. . . . Mr. Holloway is in full compliance with prior Court Orders . . . and the Buncombe County Department of Social Services is in receipt of a positive homestudy . . . .

9. That the Buncombe County Department of Social Services recommended that it would be in the best interest of the minor child that his custody by [(sic)] placed with his father, Richard Holloway, and that the DSS case be closed. DSS did not recommend placement, or custody, with Pamela Ledbetter, due to her behaviors and the negative effect those behaviors have had on the minor child.

10. That it would be in the best interest of the minor child that his custody be placed with his father, Richard Holloway.

11. That the Buncombe County Department of Social Services made reasonable efforts to prevent removal of the child from the home, but removal was necessary to protect the safety and health of the minor child; and that the Buncombe County Department of Social Services has made reasonable efforts to return the minor child to the home, but returning to the home is no longer the best plan for the minor child.

None of these findings address the requirement in N.C. Gen. Stat. § 7B-907(b)(1) requiring the court make findings regarding "[w]hether it is possible for the juvenile to be returned home . . . within the next six months. . . ." N.C. Gen. Stat. § 7B-907(b)(1). Moreover, findings that respondent was held in contempt of court for violating visitation restrictions, and that she has refused to pay child support, do not alone explain "why it is not in the juvenile's best interests to return home[.]" Despite evidence of the child's encopresis, and that contact with respondent may be a significant trigger for his condition, the order contains no findings of fact relating to this issue. In fact, the trial court deleted the relevant findings.

**IN RE LEDBETTER**

[158 N.C. App. 281 (2003)]

The court also did not address the requirement of N.C. Gen. Stat. § 7B-907(b)(4) requiring the court to explain why the child was being transferred from the Johnsons' to his father. A DSS report explains the Johnsons "are no longer willing to continue having [the child] live with then[(sic)], unless they are granted guardianship." This context suggests that given the choice between the mother, the father, and foster care, the court chose to place the child with the father. However, this does not demonstrate a permanent plan or why that plan is in the best interests of the child. The court found as fact and concluded as a matter of law that it was in the child's best interests to be placed in the custody of his father, but there are no supporting findings of fact except that respondent was in noncompliance with court orders while the father was in compliance with the prior orders.

Finally, the meaning of the court's finding that "returning home is no longer the best plan for the minor child" has been debated on appeal. Respondent asserts this was an order for DSS to cease reunification efforts, while DSS asserts the court meant to add to the finding the words: "at this time." Neither interpretation resolves the underlying problem that these findings of fact do not comport with the requirements of N.C. Gen. Stat. § 7B-907(b).

We note the evidence and reports in this case might have supported the determination of the trial court. However, our statute requires the court to consider the § 7B-907(b) factors and make relevant findings. In this case, respondent correctly asserts the findings of fact do not comport with the requirements of the statute. Recent decisions of this Court support reversing the order of the trial court and remanding the case where the findings of fact do not comport with N.C. Gen. Stat. § 7B-907. *In the Matter of Eckard*, 148 N.C. App. 541, 559 S.E.2d 233 (2002) (reversing the order of the trial court and remanding the case in part due to failure to comply with N.C. Gen. Stat. § 7B-907(b)(2)); *In re Dula*, 143 N.C. App. 16, 544 S.E.2d 591, *aff'd*, 354 N.C. 356, 554 S.E.2d 336 (2001) (reversing the order of the trial court and remanding the case for failure to comply with N.C. Gen. Stat. § 7B-907(d)).

Accordingly, we reverse the order and remand this case to the trial court. We do not reach respondent's remaining assignments of error.

Reversed and remanded.

Chief Judge EAGLES and Judge HUNTER concur.