IN THE SUPREME COURT OF NORTH CAROLINA

No. 40PA13

FILED 20 DECEMBER 2013

IN THE MATTER OF: L.M.T., A.M.T.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous, unpublished decision of the Court of Appeals, ___ N.C. App. ___, ___ S.E.2d ___ (2012), reversing orders entered on 19 October 2010 and 5 March 2012, both by Judge Edward A. Pone in District Court, Cumberland County, and remanding for additional findings of fact. Heard in the Supreme Court on 4 September 2013.

*Christopher L. Carr and Elizabeth Kennedy-Gurnee for Cumberland County Department of Social Services, and Beth A. Hall, Attorney Advocate for the Guardian ad Litem, petitioner-appellants.*

*J. Thomas Diepenbrock for respondent-appellee-mother.*

*Annick Lenoir-Peek, Assistant Appellate Defender, for Office of Parent Representation, amicus curiae.*

NEWBY, Justice.

In this case we consider the statutory requirement that a trial court make certain findings of fact in matters involving the legal separation of a parent and child. Though a trial court is required to make written findings of fact in a permanency planning order that consider the factors in section 7B-507 of our General Statutes, these findings need not recite the statutory language verbatim. When reviewing the sufficiency of such orders, an appellate court should consider whether the trial court's findings of fact address the substance of the statutory requirements. Further, even

if the permanency planning order is deficient standing alone, the appellate court should review that order in conjunction with the trial court's termination of parental rights order to determine whether the statutory requirements are met. In some instances, a deficiency in one may be cured by the other. In this case, because both the permanency planning order and the termination of parental rights order comply with the statutory mandate, we reverse the decision of the Court of Appeals.

Respondent Mother appealed after the trial court entered two orders that (1) ceased reunification efforts between respondent and her children, L.M.T. and A.M.T., ("cease reunification order") and (2) terminated respondent's parental rights ("termination order"). At the Court of Appeals respondent argued that the trial court's cease reunification order failed to satisfy section 7B-507, which requires trial courts to "make[ ] written findings of fact that" further reunification efforts would be "futile" or "inconsistent with the juvenile's health, safety, and need for a safe, permanent home." N.C.G.S. § 7B-507(b)(1) (2011). The Court of Appeals acknowledged that in the cease reunification order the trial court "made numerous and detailed findings addressing respondent's troubled case history." *In re L.M.T.*, ___ N.C. App. ___, ___ S.E.2d ___, No. COA12-743, 2012 WL 6595388, at *2 (Dec. 18, 2012) (unpublished). Moreover, the Court of Appeals found "sufficient evidence in the record to support the required findings." *Id.* at *3. Nonetheless, the Court of Appeals determined that the cease reunification order contained "no finding explicitly linking those facts with any of the factors listed in N.C. Gen. Stat. § 7B-507, including

the futility of further reunification efforts or that further efforts would be inconsistent with the juveniles' health, safety, and need for a safe, permanent home." *Id.* at *2. Based on these perceived deficiencies in the cease reunification order, and without considering the termination of parental rights order, the Court of Appeals reversed both orders and remanded for additional findings. *Id.* at *3.

We allowed discretionary review to consider the requirement that a trial court make certain findings of fact under subsection 7B-507(b) of our Juvenile Code. *In re L.M.T.*, ___ N.C. ___, 738 S.E.2d 359 (2013). The purpose of the Juvenile Code is, in part, to "provide standards for the removal, when necessary, of juveniles from their homes and for the return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents" and to ensure "that the best interests of the juvenile are of paramount consideration by the court." N.C.G.S. § 7B-100(4), (5) (2011). The General Assembly further stated that "when it is not in the juvenile's best interest to be returned home, the juvenile will be placed in a safe, permanent home within a reasonable amount of time." *Id.* § 7B-100(5). The Juvenile Code strikes a balance between the constitutional rights of a parent and the best interests of a child, *id.* § 7B-100(3) (2011) (stating that a purpose of the Juvenile Code is "[t]o provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence"), and provides a protective framework when a juvenile is "alleged to be abused, neglected, or dependent," *id.* § 7B-300 (2011). *See*

*In re R.T.W.*, 359 N.C. 539, 553, 614 S.E.2d 489, 498 (2005) ("Parents' fundamental right to control their children at some point gives way to the state's interest in the welfare of the child. In Subchapter I of our Juvenile Code, the General Assembly has established procedures to safeguard parental rights while simultaneously providing for the removal of children and even the termination of parental rights.").

To advance the Juvenile Code's dual purpose of protecting parental rights and promoting the best interests of the child, subsection 7B-507(b) requires that trial courts make written findings of fact in orders that place "a juvenile in the custody or placement responsibility of a county department of social services." N.C.G.S. § 7B-507(b) (2011). Relevant to the case at hand, that statute mandates:

> [T]he court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]

*Id.* Strict adherence to this statute ensures that the trial court fulfills the aspirations of the Juvenile Code by allowing our appellate courts to conduct a thorough review of the order. While trial courts are advised that use of the actual statutory language would be the best practice, the statute does not demand a verbatim recitation of its language as was required by the Court of Appeals in this case. Put differently, the order must make clear that the trial court considered the evidence in light of whether reunification "would be futile or would be inconsistent with the juvenile's health,

safety, and need for a safe, permanent home within a reasonable period of time." The trial court's written findings must address the statute's concerns, but need not quote its exact language. On the other hand, use of the precise statutory language will not remedy a lack of supporting evidence for the trial court's order.

Our review of the cease reunification order in this case "is limited to whether there is competent evidence in the record to support the findings [of fact] and whether the findings support the conclusions of law." *In re P.O.*, 207 N.C. App. 35, 41, 698 S.E.2d 525, 530 (2010) (citing *In re Eckard*, 148 N.C. App. 541, 544, 559 S.E.2d 233, 235, *disc. rev. denied*, 356 N.C. 163, 568 S.E.2d 192 (2002)). The trial court's findings of fact are conclusive on appeal if supported by any competent evidence. *Id.* (citing *In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003)).

At the permanency planning review hearing, the trial court considered extensive evidence from multiple witnesses, including respondent, about respondent's continued drug abuse, which she admitted occurred in the presence of her children; her lack of employment, attempted suicide, and confessed deception of the court; her involvement in domestic violence with her husband; and other repeated instances of behavior inconsistent with the best interests of the juveniles. That evidence supported the following findings of fact contained in the cease reunification order:

> The Respondent Mother has now disclosed that she has a substance abuse problem, primarily related to prescription drugs.

[Respondent Mother's drug use became] increasingly worse . . . while she was in the process of seeking reunification with the juveniles.

There have been instances of domestic violence between the Respondent Mother and her now husband . . . . At least one of those incidents involved [respondent's] use of a knife. . . .

The environment of the Respondent Mother's home is not conducive to raising children. In fact, the environment that the Respondent Mother and her husband have created is injurious.

That while the Court, the Department, the Guardian ad Litem and everyone else involved was working toward the reunification process, the Respondent Mother was sinking deeper and deeper into an abyss of domestic violence and drug abuse all the while covering it up and refusing to acknowledge the fact of its existence in order that the Court, the Department, the Guardian ad Litem and others surrounding her could assist her and help the juveniles. The deception of the Court during this process is bad enough, but the Respondent Mother has completely let her children down.

The Respondent Mother and her husband are facing eviction and have received a notice to vacate their housing. . . .

[The juveniles] are in need of permanence and deserve a fresh start.

The Court determines that in the best interest of the juveniles, the permanent plan should now be changed to that of placement with other Court approved caretakers with a concurrent plan of adoption.

Return of the juveniles to the custody of the Respondents would be contrary to the welfare and best interest of the juveniles.

While these findings of fact do not quote the precise language of subsection 7B-507(b), the order embraces the substance of the statutory provisions requiring

findings of fact that further reunification efforts "would be futile" or "would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time." N.C.G.S. § 7B-507(b)(1). As an example, the trial court's finding that "the environment that the Respondent Mother and her husband have created is injurious" indicates that further reunification efforts would be "inconsistent" with the juveniles' "health" and "safety." *Id.* Likewise, the trial court's findings of fact related to respondent's drug abuse, participation in domestic violence, deception of the court, and repeated failures at creating an acceptable and safe living environment certainly suggest that reunification efforts "would be futile." *Id.* Moreover, these findings clearly support the trial court's conclusions that "[r]eturn of the juveniles . . . is contrary to the welfare and best interest of the juveniles," "[t]hat in the best interest of the juveniles, legal and physical custody should remain with the Cumberland County Department of Social Services," and "[t]hat the Cumberland County Department of Social Services should be relieved of reunification and visitation efforts with the Respondents."

Even if the cease reunification order standing alone had been insufficient, that would not end the appellate court's inquiry. Parents may seek appellate review of cease reunification orders only in limited circumstances. In this case, respondent appealed under subsection 7B-1001(a)(5)(a), which provides that

> a. The Court of Appeals shall review [an] order [entered under section 7B-507] to cease reunification together with

> an appeal of the termination of parental rights order if all
> of the following apply:
> 1. A motion or petition to terminate the parent's
>    rights is heard and granted.
> 2. The order terminating parental rights is
>    appealed in a proper and timely manner.
> 3. The order to cease reunification is identified as
>    an issue in the record on appeal of the
>    termination of parental rights.

*Id.* § 7B-1001(a)(5) (2011). In other words, if a termination of parental rights order

is entered, the appeal of the cease reunification order is combined with the appeal of

the termination order.

Despite the General Assembly's plain language that we are to "review the order

to cease reunification *together* with an appeal of the termination of parental rights

order," *id.* (emphasis added), respondent urges the Court to consider each order by

itself. Had the General Assembly intended to so limit our scope of review, it could

have clearly drawn such a distinction. Rather, the legislature unambiguously

instructed our appellate courts to review both orders "together." The word "together"

is defined to include "at one time," "with each other," and "considered as a whole."

*Webster's Third New International Dictionary* 2404 (1967). Accordingly, we read this

statute to mean that we are to look to both orders "with each other," *id.*, to determine

whether the trial court has made sufficient findings of fact. Because we consider both

orders "together," incomplete findings of fact in the cease reunification order may be

cured by findings of fact in the termination order. This application of the statute is

consistent with the "paramount" aim of the Juvenile Code to provide for "the best

interests of the juvenile" within a "reasonable amount of time." N.C.G.S. § 7B-100(5); *see also* Act of Aug. 23, 2005, ch. 398, 2005 N.C. Sess. Laws 1455 (captioned "An Act to Amend the Juvenile Code to Expedite Outcomes for Children and Families Involved in Welfare Cases and Appeals and to Limit the Appointment of Guardians ad Litem for Parents in Abuse, Neglect, and Dependency Proceedings."); c*f. In re M.I.W.*, 365 N.C. 374, 381, 722 S.E.2d 469, 474 (2012) ("Our holding [ensures that the best interest of the juvenile are of paramount consideration] by minimizing procedural delay that interferes with addressing the needs of the child when that delay is unnecessary to protect the rights of parents.").

Though the issue was not addressed by the Court of Appeals, to provide finality in this case we now shift our attention to the sufficiency of the termination of parental rights order. In regards to this order, at the Court of Appeals respondent challenged only the trial court's conclusion of law that terminating her parental rights would be in the best interests of her children.

"Once the trial court has found a ground for termination, the court then considers the best interests of the child in making its decision on whether to terminate parental rights." *In re S.N.*, 194 N.C. App. 142, 146, 669 S.E.2d 55, 59 (2008), *aff'd per curiam*, 363 N.C. 368, 677 S.E.2d 455 (2009). When making a decision on a child's best interests, section 7B-1110 requires the trial court to consider:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.

N.C.G.S. § 7B-1110 (2011). "We review this decision on an abuse of discretion standard, and will reverse a court's decision only where it is 'manifestly unsupported by reason.'" *In re S.N.*, 194 N.C. App. at 146, 669 S.E.2d at 59 (citation omitted); *see also In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984) ("[T]he court's decision to terminate parental rights is discretionary.").

At the termination of parental rights hearing, the trial court again took extensive evidence regarding domestic violence, lack of necessary medical care for the juveniles, respondent's admitted drug abuse and related criminal activity, her neglect of the juveniles while they were visiting her, specifically that they were not "fed" or "bathed," her failure to obtain a job and pay child support, and her struggles with mental illness. The court heard further testimony that respondent had made little progress toward changing the circumstances that initially led to the removal of her children and that another family was interested in permanently adopting them. The trial court made the following findings of fact:

> That the Respondent Mother and [her husband] have demonstrated a pattern of failing to provide appropriate care for the juveniles and the Court finds that it is probable that this

neglect would be repeated if custody of the juveniles was returned to the Respondent Mother.

That the Respondent Mother's situation has not improved, and based on the evidence presented on this date, the juveniles would be subjected to irreparable harm if the juveniles were returned to the home of the Respondents.

Since [the Department of Social Services was relieved of reunification and visitation efforts], the Respondent Mother has not made efforts to communicate with the juveniles by sending any cards, gifts, or letters to the juveniles.

The Respondent Mother has willfully failed to pay any amount towards the costs of care for the juveniles. The Respondent Mother is physically and financially able to do so.

The Respondents have demonstrated a pattern of failing to provide appropriate care for the juveniles. It is highly probable that neglect would be repeated if custody of the juveniles was returned to either of the Respondents. The Respondents have neglected the welfare of the juveniles for several years. This behavior is likely to continue into the foreseeable future.

Additionally, the court concluded that "based on the tender age of the juveniles, the likelihood of adoption for each of the juveniles is great," that there is a "minimal bond" between respondent and her children, and that the juveniles "have begun to adjust" to their "potential adoptive home." Given the totality of the evidence and the trial court's extensive order, the court clearly considered the factors in section 7B-1110. Viewing the trial court's decision through the lens of the abuse of discretion standard, we cannot say that its determination was manifestly unsupported by reason, and we must thus defer to the trial court's judgment "that it is in the best interest of these

juveniles for the purpose of obtaining safety, permanence, and stability that the parental rights of the Respondents . . . be terminated."

Accordingly, we conclude that the trial court's orders ceasing reunification and terminating respondent's parental rights were each sufficient standing alone and should have been affirmed. The Court of Appeals erred both in its analysis of the cease reunification order and in its determination that the cease reunification order was deficient without considering that order in light of the findings of fact in the termination order. Ending a parent-child relationship is a decision the court must weigh carefully, mindful of constitutional protections and statutory safeguards. Those safeguards, however, are to be applied practically so that the best interests of the child—the polar star in controversies over child neglect and custody—are the paramount concern. The decision of the Court of Appeals is therefore reversed thereby reinstating the trial court's orders.

REVERSED.

Justice BEASLEY concurring.

I concur in the majority's holding that the trial court's findings of fact are sufficient under N.C.G.S. § 7B-507(b)(1) to support its conclusion that reunification efforts should cease in respondent's case. I disagree, however, with the majority's further statement that any hypothetical deficiencies in the permanency planning order's findings could be "cured" by examining that order in conjunction with the

order terminating respondent's parental rights.[1]  Accordingly, I write separately to express my concerns.

The majority correctly observes that this case asks us to "consider the statutory requirement that a trial court make certain findings of fact in matters involving the legal separation of a parent and child."  This inquiry is controlled by N.C.G.S. § 7B-507(b), which specifies that orders relieving county departments of social services of further reunification efforts must include findings of fact addressing, among other considerations, whether "[s]uch efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time."  N.C.G.S. § 7B-507(b)(1) (2013).  The majority concludes—and I agree—that the trial court's findings in this case, while not couched in the "precise language" of N.C.G.S. § 7B-507(b)(1), are sufficient to "embrace the substance of the statute."

In its order, the trial court found as fact:

> 3. The Court readopts the findings from the previous orders entered in this matter, and the Court further finds that those were the findings that existed at the time that those particular orders were entered.
>
> 4. The juveniles were adjudicated dependent on January 5, 2010.  They have remained in the continual care of the

---

[1] The majority refers to the trial court's 19 October 2010 order as a "cease reunification order."  Because reunification efforts are only one aspect of the review that district courts undertake in conducting permanency planning hearings, I refer to the order as a "permanency planning order."

Cumberland County Department of Social Services since on or about August 31, 2009, as a result of a Non Secure Custody Order filed subsequent to the filing of the Petition. The Petition was filed on July 29, 2009.

5. It is not possible for the juveniles to return to the custody of the Respondents in as much as the conditions which led to the removal of the juveniles from the home as well as the accruing conditions have not been alleviated.

6. Since the previous hearing, it has been determined that the Respondent Mother has been very much less than candid with the Court, the Cumberland County Department of Social Services as well as all others involved in this case.

7. The Respondent Mother has now disclosed that she has a substance abuse problem, primarily related to prescription drugs. Her testimony today indicates that she began abusing the drugs in November, 2009. The abuse has become increasingly worse. The Court notes that this occurred while she was in the process of seeking reunification with the juveniles. She failed to disclose this to the Court or the Cumberland County Department of Social Services. In fact, at a previous hearing where the Cumberland County Department of Social Services had significant concerns about missing prescription medication, the Respondent Mother came into court and, in fact, lied under oath. She attributed the missing medication into [sic] a mix-up at the pharmacy. She indicated that the pills were not actually missing but that she had taken the pills back to the pharmacy and there was some problem with the pharmacy records. She admitted today that that statement was not true and that she and a friend had abused the prescription drugs. In fact, she did this while the juveniles were within her care.

. . . .

9. There have been incidents of domestic violence between the Respondent Mother and her now husband Mr.

Dickerson. At least one of those incidents involved the use of a knife by the Respondent Mother directed toward her husband. Additionally, the Respondent Mother's husband has a problem with illegal drugs and prescription drugs. Each of them are facing serious felony charges. The Respondent Mother is currently facing charges of Felony Trafficking Opium or Heroin and Felony Obtaining a Controlled Substance by Fraud or Forgery. This incident surrounds allegations of forgery of a prescription. They could both face a significant period of incarceration. Additionally, the Respondent Mother is facing charges of Driving While Impaired. The offense date for that is August 20, 2010. She took a significant number of Zanex, and her testimony today is that she has little or no recollection after taking the pills.

10. The Respondent Mother's husband's chain of command has had significant difficulties with the substance abuse and domestic violence between the Respondent Mother and the Respondent Mother's husband. They have had to respond to several different incidents. Witnesses present in court today have responded to several of the domestic violence incidents as well as other incidents involving illegal drugs and controlled substances. The Respondent Mother's husband has been placed on buddy-watch on at least four (4) different occasions within the past couple of months. Buddy-watch is placed in effect when an individual has suicidal or homicidal ideations. Both the Respondent Mother and her husband have had suicidal attempts. Mr. Dickerson has been taken to the 6th floor at Womack Army Hospital which is the unit that deals with behavioral and emotional and mental health issues as well as substance abuse issues. He has gone there on at least one (1) occasion within the past sixty (60) days. The environment of the Respondent Mother's home is not conducive to raising children. In fact, the environment that the Respondent Mother and her husband have created is injurious.

11. Of significant concern to this Court is the fact that these juveniles were formerly placed with relatives and had to be

removed following significant incidents and a toxic relationship between the Respondent Mother and her relatives. The Court has previously ruled out relative involvement as a result of that and has closed that chapter in these juveniles' lives while we made a sincere and significant effort to reunify the Respondent Mother with her children. That while the Court, the Department, the Guardian ad Litem and everyone else involved was working toward the reunification process, the Respondent Mother was sinking deeper and deeper into an abyss of domestic violence and drug abuse all the while covering it up and refusing to acknowledge the fact of its existence in order that the Court, the Department, the Guardian ad Litem and others surrounding her could assist her and help the juveniles. The deception of the Court during this process is bad enough, but the Respondent Mother has completely let her children down.

12. The Respondent Mother and her husband are facing eviction and have received a notice to vacate their housing by October 11, 2010. Mr. Dickerson has obtained a new residence at 709 Wellons Avenue in Spring Lake, North Carolina. The Respondent Mother is not listed as a tenant on the lease, and their relationship at this time is unclear. Mr. Dickerson is in the process of being chaptered out of the military. That is likely to occur within a very short period of time. The Respondent Mother is unemployed.

. . . .

15. The juveniles have been in care since August 31, 2009. They are in need of permanence and deserve a fresh start. The juveniles are doing well in the current foster care placements. There are no suitable relatives, based on the information that has previously been provided to the Court, and relative placement is not appropriate for these juveniles.

. . . .

17. The previous permanent plan was reunification with the Respondent Mother. The Court previously approved of this plan and finds that the Cumberland County Department of Social Services has been making reasonable efforts, as required by N.C. Gen. Stat. §§ 7B-507 and 7B-907, to implement that permanent plan of care. Those efforts include, but are not limited to, conducting Child and Family Team Meetings, developing an appropriate Out-of-Home Family Services Case Plan, making necessary referrals, coordinating with the Respondent Mother to complete the psychological evaluation and parenting assessment, and ensuring that the needs of the juveniles were being met. The Court determines that in the best interest of the juveniles, the permanent plan should now be changed to that of placement with other Court approved caretakers with a concurrent plan of adoption. The Court further determines that the Cumberland County Department of Social Services should be relieved of reunification and visitation efforts with the Respondents.

18. Return of the juveniles to the custody of the Respondents would be contrary to the welfare and best interest of the juveniles.

Based on these findings, the trial court concluded:

2. Return of the juveniles to the Respondents is contrary to the welfare and best interest of the juveniles.

3. That the Cumberland County Department of Social Services should be relieved of reunification and visitation efforts with the Respondents.

. . . .

5. That in the best interest of the juveniles, legal and physical custody should remain with the Cumberland County Department of Social Services for placement in foster care, with suitable relatives or with other Court approved caretakers, pending further orders of the Court.

The trial court's adoption of the findings contained in its previous orders is critical, I believe, because it shows that the trial court was aware of the developments in this case, from the events leading to the juveniles entering Cumberland County DSS custody in August 2009 to the events precipitating the court's decision to cease reunification efforts in October 2010. The court's finding that the conditions which led to the juveniles' removal from respondent's custody had not been alleviated and, in fact, had worsened implicitly recognizes that continuing reunification efforts would be futile. Such a conclusion is further supported by the trial court's findings regarding respondent's increasing abuse of prescription drugs, her "sinking" into an "abyss of domestic violence," her consistent deception of the trial court, and her inability to obtain and maintain a safe home for the juveniles. The court's findings further recognize that it would be inconsistent with the juveniles' health and safety to work toward reunifying respondent with the juveniles—indeed, the court found that the living environment created by respondent is "injurious" and "not conducive to raising children." Moreover, in the trial court's finding of fact 17, the court reviews its "previous permanent plan," recites the "reasonable efforts" made by the Cumberland County Department of Social Services, and determines that the Department "should be relieved of reunification . . . efforts with the Respondents," indicating that the trial court properly considered the relevant factors set out in N.C.G.S. § 7B-507(b)(1).

Accordingly, I agree with the majority that the trial court's findings of fact in its permanency planning order "address the substance of the statutory requirements" under N.C.G.S. § 7B-507(b)(1). *See In re T.R.M.*, 208 N.C. App. 160, 164, 702 S.E.2d 108, 111 (2010) (determining that the trial court's findings supported its "conclusion that further reunification efforts were not required" despite none of the findings using N.C.G.S. § 7B-507(b)(1) phraseology); *In re D.J.D.*, 171 N.C. App. 230, 238, 615 S.E.2d 26, 32 (2005) (concluding that the trial court's finding that "return of the children would be contrary to their best interests," coupled with a recitation of "DSS attempts to assist the mother, were sufficient to support cessation of reunification efforts).

Nonetheless, despite having concluded that the trial court's permanency planning order is sufficient "standing alone," the majority then discusses whether the order also might have been sufficient if read together with the trial court's termination order. This discussion is both unnecessary and inappropriate. It is unnecessary because we have already held that the trial court's "written findings of fact in [its] permanency planning order [establish] that [it] consider[ed] the factors in section 7B-507 of our General Statutes." We have thus answered the question before us; we should not engage in any further analysis that is not necessary to dispose of this case.

The majority's discussion is, moreover, inappropriate in light of the well-established principle that "[i]t is no part of the function of the courts, in the exercise

of the judicial power vested in them by the Constitution, to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter." *Poore v. Poore,* 201 N.C. 791, 792, 161 S.E. 532, 533 (1931) (citations omitted). Critically, we have held that the permanency planning order in this case adequately stands on its own under N.C.G.S. §§ 7B-507 and 7B-907. Thus any further discussion of whether a hypothetically deficient order could be salvaged by looking at a subsequent termination order is purely advisory in nature. Because the facts of this case do not compel this Court to answer this question, we should refrain from doing so. *See Boswell v. Boswell*, 241 N.C. 515, 518-19, 85 S.E.2d 899, 902 (1955) ("This Court declares the law as it relates to the facts of the particular case under consideration. A decision may be considered authority only within the framework of such facts. Dissimilarity as to a material fact may call for application of a different principle of law. Hence, the Court will not give advisory opinions or decide abstract questions." (citations omitted)).

Beyond issues of judicial restraint and abstract questions, I further disagree with the majority's merging of permanency planning and termination orders for purposes of appellate review. Underlying my disagreement is the fact that permanency planning hearings are fundamentally different in nature than proceedings to terminate parental rights. We have recognized that

> [t]he permanency planning process in Article 9 [of
> Chapter 7B] is meant to bring about a definitive placement
> plan for the abused, neglected, or dependent child. Within
> twelve months of its initial custody order removing a child
> from his parent, the court *must* conduct a permanency
> planning hearing to "develop a plan to achieve a safe,
> permanent home for the juvenile within a reasonable
> period of time." [N.C.G.S.] § 7B-907(a). The permanent
> plan may include, *inter alia*, returning the child to his
> parent, legal guardianship, or adoption. *See* N.C.G.S. § 7B-
> 907. The court enters a written order memorializing the
> permanent plan and continuing or modifying custodial
> arrangements accordingly. *Id.* § 7B-907(c). Even the
> "permanent plan" is not immutable, however. Follow-up
> hearings every six months enable the court to review
> progress and, if necessary, formulate a new permanent
> plan. N.C.G.S. § 7B-907(a).

*In re R.T.W.*, 359 N.C. 539, 546, 614 S.E.2d 489, 494 (2005), *superseded by statute on*

*other grounds,* Act of Aug. 23, 2005, ch. 398, sec. 12, N.C. Sess. Laws 1455, 1460-61,

*as recognized in In re T.R.P.*, 360 N.C. 588, 592, 636 S.E.2d 787, 791 (2006).[2]

"The essential requirement[ ] at . . . the review hearing[ ] is that sufficient

evidence be presented to the trial court so that it can determine what is in the best

interest of the child." *In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984). In

light of this objective, neither the parent nor the county department of social services

bears the burden of proof in permanency planning hearings, and the trial court's

---

[2] The General Assembly has recently merged the provisions regarding custody review
hearings, N.C.G.S. § 7B-906, and permanency planning hearings, N.C.G.S. § 7B-907, into one
provision: N.C.G.S. § 7B-906.1 (2013). *See* Act of June 13, 2013, ch. 129, secs. 25, 26, 2013
Sess. Laws __, __ (effective October 1, 2013). As the proceedings in this matter occurred
before the amendment's 1 October 2013 effective date, N.C.G.S. § 7B-906.1 does not apply.

findings of fact need only be supported by sufficient competent evidence. *Id.* at 597, 319 S.E.2d at 574.

In contrast to the fluidity and reviewability built into Article 9 decisions, "the dissolution of parental rights under Article 11 is decisive. Termination orders 'completely and permanently terminate[ ] all rights and obligations of the parent to the juvenile and the juvenile to the parent arising from the parental relationship.' " *In re R.T.W.*, 359 N.C. at 548, 614 S.E.2d at 494 (alteration in original) (quoting N.C.G.S. § 7B-1112). The petitioner bears the burden of proving that grounds for termination exist and, given the gravity of such decisions, the trial court's findings of fact must be "based on clear, cogent, and convincing evidence." N.C.G.S. § 7B–1109(f) (2013). Given these important differences in the purposes of and procedures involved in the two types of proceedings, I do not believe that a trial court's findings in a termination order may substitute for or supplement the factual determinations necessary to support a decision to cease reunification efforts.

The majority concludes that N.C.G.S. § 7B-1001(a)(5) authorizes our appellate courts to consider both orders "together" so that any "incomplete findings of fact in the cease reunification order may be cured by findings of fact in the termination order." In support of this conclusion, the majority cites the General Assembly's 2005 amendments to the Juvenile Code's framework for appealing juvenile cases, entitled "An Act to Amend the Juvenile Code to Expedite Outcomes for Children and Families

Involved in Welfare Cases and Appeals and to Limit the Appointment of Guardians Ad Litem for Parents in Abuse, Neglect, and Dependency Proceedings." *See* Ch. 398, 2005 N.C. Sess. Laws 1455. The majority, however, ignores the fact that the 2005 amendments were enacted by the legislature to supersede our decision in *In re R.T.W.*, 359 N.C. 539, 614 S.E.2d 489, in which we held that the entry of an order terminating parental rights during the pendency of an appeal from a permanency planning order renders the pending appeal moot. *Id.* at 553, 614 S.E.2d at 498. The majority's holding that a permanency planning order containing insufficient findings may be "cured" by substituting the findings from a subsequent termination order is simply a retooling of the holding in *R.T.W.*, one that was rejected by our General Assembly.

Subsection 7B-1001(a) enumerates the "juvenile matters [that] may be appealed," providing in pertinent part:

> The Court of Appeals shall review the order to cease reunification together with an appeal of the termination of parental rights order if all of the following apply:
>
> > 1. A motion or petition to terminate the parent's rights is heard and granted.
> >
> > 2. The order terminating parental rights is appealed in a proper and timely manner.
> >
> > 3. The order to cease reunification is identified as an issue in the record on appeal of the termination of parental rights.

N.C.G.S. § 7B-1001(a)(5)(a) (2013).  The majority reads this provision as establishing that "the legislature unambiguously instructed our appellate courts to review both orders " 'together[.]' "  But this is not what the statute says.  Rather, the statute authorizes our appellate courts to "review the order to cease reunification *together with an appeal* of the termination of parental rights order."  *Id.* (emphasis added).  Contrary to the majority's interpretation, the statute merely dictates the *timing* of when an underlying permanency planning order may be reviewed, which is "with an appeal of the termination of parental rights order."[3]

Had the legislature intended to authorize the rehabilitation of a defective permanency planning order by borrowing from a subsequent termination order, it "clearly" would have done so.  Rather than saying that an order ceasing reunification efforts may be "review[ed] . . . *together with an appeal* of the termination of parental rights order," *id.* (emphasis added), the General Assembly would have said that such an order may be "review[ed] . . . *together with the order* terminating parental rights."

Reflecting on the practical results of the majority's holding further suggests that the majority has misconstrued the statute.  Under the majority's rationale, despite the legislature's mandate that we "review the order to cease reunification together with an appeal of the termination of parental rights order," *id.*, we need not

---

[3] N.C.G.S. § 7B-1001 also permits a parent "to appeal the order [ceasing reunification efforts] if no termination of parental rights petition or motion is filed within 180 days of the order."  N.C.G.S. § 7B-1001(a)(5)(b) (2013).

actually conduct a review of such an order because even the most deficient or defective order ceasing reunification efforts can be ignored so long as we conclude that the termination order contains findings that, when considered *post hoc*, justify the cessation of reunification efforts. But this outcome is effectively what we held in *R.T.W.* and what the General Assembly overrode in enacting the 2005 amendments to the Juvenile Code. The majority simply reads out of the statute the deliberately imposed requirement that orders ceasing reunification efforts "shall" be subject to review and reinstates the holding from *R.T.W.* *But see Town of Pine Knoll Shores v. Evans*, 331 N.C. 361, 366, 416 S.E.2d 4, 7 (1992) ("[W]ords of a statute are not to be deemed useless or redundant and amendments are presumed not to be without purpose." (citations omitted)). This decision is for the General Assembly to make, not this Court.

Simply put, I believe that the General Assembly intended our appellate courts to review permanency planning orders separately and independently from termination orders. I find nothing in N.C.G.S. § 7B-1001(a)(5) suggesting that a termination order may effectively render a flawed permanency planning order moot. Indeed, there is no point to explicitly providing parents with a right to review decisions to cease reunification efforts only to have that review obviated by allowing courts to leapfrog the permanency planning order and review the termination order in its place.

This conclusion is further supported by examining the provisions in the Juvenile Code detailing the process required to "preserve" such decisions for review. Subsection 7B-507(c) provides, in pertinent part, that "[a]t any hearing at which the court orders that reunification efforts shall cease, the affected parent, guardian, or custodian may give notice to preserve the right to appeal that order in accordance with G.S. 7B-1001." N.C.G.S. § 7B-507(c) (2013). This notice of preservation is required to be "given in writing by a proper party as defined in G.S. 7B-1002 and shall be made within 30 days after entry and service of the order in accordance with G.S. 1A-1, Rule 58." *Id.* § 7B-1001(b) (2013). Section 7B-1001(a)(5) further provides that review is proper only if the parents' "rights to appeal [were] properly preserved" under N.C.G.S. § 7B-507(c). *Id.* § 7B-1001(a)(5).

The majority's holding frustrates parents' efforts to preserve their challenges to decisions ceasing reunification efforts. If parents fail to comply with any step of the preservation process, they have waived appellate review. *See In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 908-09 (concluding that a father waived appellate review of an order ceasing reunification efforts by failing to give notice within statutory time frame), *appeal dismissed*, 363 N.C. 654, 686 S.E.2d 676 (2009). Even if parents do preserve their right to appeal, under the majority's reasoning, a reviewing court is nonetheless not required to address any deficiencies in the permanency planning order's findings of fact and conclusions of law so long as the ultimate order terminating the parents' rights can be read as justifying the trial

court's earlier decision.  The General Assembly, I believe, did not set out a specific process for preserving the right to challenge decisions ceasing reunification efforts, only to have that right frustrated by a mode of review that does not require independent scrutiny of that very order.

The majority concludes that the trial court's findings of fact support its conclusion of law that reunification efforts should cease in this case.  This holding is all that is necessary to dispose of this case.