650 S.E.2d 45 (2007)
In the Matter of N.G.
No. COA07-369.
Court of Appeals of North Carolina.
September 18, 2007.
E. Marshall Woodall and Duncan B. McCormick, Lillington, for petitioner-appellee Harnett County Department of Social Services.
Sofie W. Hosford, for respondent-appellant mother.
Lisa Skinner Lefler, Wilmington, for respondent-appellant father.
Elizabeth Myrick Boone, Sanford, for guardian ad litem.
ELMORE, Judge.
On 24 October 2005, the Harnett County Department of Social Services (DSS) filed a juvenile petition alleging that N.G. was a neglected child. DSS claimed that N.G. was not receiving proper medical care due to respondents' desire to conceal the child's existence from DSS. DSS alleged that respondents concealed the pregnancy and birth of the child due to the family's history with the agency. Specifically, DSS noted that respondents' parental rights had been terminated with respect to their first child, and that their second child was in DSS custody. DSS further stated that respondents' first child, L.G., sustained injuries associated with "shaken baby syndrome" and that the injuries were deemed non-accidental. Respondents' second child was removed based on the assessment that the home environment being assessed as injurious to the child's welfare. DSS alleged that N.G. also lived in an environment injurious to her welfare due to the significance of L.G.'s injuries, respondents' lack of cooperation with DSS, and their inability to take responsibility or explain L.G.'s injuries. A non-secure custody order was entered and N.G. was removed from respondents' home.
An adjudicatory and dispositional hearing was held on 20 September 2006. On 30 January 2007, the trial court entered the written adjudicatory and disposition order. The trial court found that N.G. was a neglected juvenile in that she lived in an environment injurious to her welfare. The trial court awarded custody to DSS, concluded that reunification would be futile, and ceased visitation. Respondents appeal.

I.
Respondents first argue that adjudicatory findings of fact numbers 5, 7, 9, 10, 12, 18, 24, 25, and 27, as well as dispositional findings of fact numbers 5, 6, 7, 8, and 9, are contrary to the evidence presented. Respondents further challenge the trial court's adjudicatory conclusions of law.
"Allegations of neglect must be proven by clear and convincing evidence. In a non-jury neglect adjudication, the trial court's findings of fact supported by clear and convincing competent evidence are deemed conclusive, even where some evidence supports contrary findings." In re Helms, 127 N.C.App. 505, 511, 491 S.E.2d 672, 676 (1997) (citations omitted).
In findings of fact numbers 5 and 7, the trial court found that N.G. lived in an environment injurious to her welfare because she was allowed to live in a home where an older sibling had been subjected to abuse and respondents had not adequately addressed the conditions that led to the abusive acts. Further, the trial court found that L.G. suffered physical injuries by other than accidental means while in respondents' care. The court then listed L.G.'s many injuries, including *48 intracranial injuries, skull fractures, fractured ribs, and fractured tibias. In finding of fact number 9, the trial court found:
The rib injuries . . . were consistent with being caused by direct impact or from forceful squeezing or compression of her ribs. The injuries to her tibias were likely caused by forceful twisting or torques of those bones. The head injuries were caused by [L.G.] being shaken violently and/or from a forceful impact to her head.
Respondents contend that petitioner failed to present clear, cogent, and convincing evidence that either respondent caused the injuries. However, in the order terminating respondents' parental rights to L.G., the trial court made almost identical findings, and found that L.G. was "an abused child in that she suffered physical injuries by other than accidental means while in the care of her parents." "The doctrine of collateral estoppel operates to preclude parties `from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.'" In re Wheeler, 87 N.C.App. 189, 194, 360 S.E.2d 458, 461 (1987)(quoting King v. Grindstaff, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973)). Therefore, respondents are estopped from denying responsibility for L.G.'s injuries.
Respondents next challenge findings made by the trial court relating to their cooperation with DSS and completion of their case plan. In finding of fact number 12, the trial court found that respondents failed to cooperate with DSS and made no progress on taking steps to improve their parenting skills. In findings of fact numbers 23 and 24, the trial court found that respondents "failed to make reasonable progress on improving their parenting skills and abilities" and had "not engaged in treatment services as ordered by the court and have continued to deny any responsibility for the injuries involving the older sibling . . . or acknowledge any wrongdoings involving that child." In dispositional finding of fact number 6, the trial court found that respondents had failed to cooperate with the various social workers and failed to fully cooperate with family service plans, and that respondents had failed to take responsibility for L.G.'s injuries and blamed others for the injuries without any reliable evidence to support their claims. In dispositional finding of fact number 7, the trial court found that respondents were "directed . . . to participate in the Family PRIDE Program to include individual counseling or therapy for each parent by a therapist approved by DSS and the [guardian ad litem]."
Respondents assert that they made efforts at cooperating with social workers and complying with their case plan. Respondents note that prior orders of the court allowed them to participate in "comparable" programs approved by DSS and the guardian ad litem. Respondents contend that they sought approval of alternative programs and attended these programs, but that their attempts at gaining approval of these programs were ignored. Finally, respondent-mother argues that she should not be faulted for refusing to admit that she injured the older sibling, noting that she has steadfastly maintained her innocence and is not required to prove her innocence.
We find respondents' arguments unpersuasive. Maria Mucciacciaro, a DSS social worker, testified that she met with respondents and specifically told them that the classes they were taking would not be accepted as an alternative to the Family PRIDE program. Mucciacciaro testified that DSS was aware of the program attended by respondents, and that although she and her supervisor reviewed the program, "[they] did not feel that this program would be a good program for [respondents], nor did [they] feel like there would be any success rate with it." Among the reasons stated by Mucciacciaro were that the program attended by respondents did not do drug testing, there were concerns whether the teacher of the class was qualified, and the program was not as "in-depth" a program in comparison to the PRIDE program.
Furthermore, as we have noted, respondents are estopped from arguing that they were not responsible for L.G.'s injuries. Dr. Sharon Cooper testified that:
If you have a parent who is unable ever to acknowledge culpability with respect to the severe injuries that a previous child has *49 had, as is the case in this circumstance, the risk for injury of subsequent infants is significantly elevated, and it is for that particular reason  according to the literature, if a person has shaken a baby once, their risk for re-injury is 77 percent, three out of four times. They must come to an understanding that shaking the infant is causing the infant harm.
Therefore, we conclude that there was clear, cogent, and convincing evidence in the record to support the trial court's adjudicatory findings of fact numbers 12, 23 and 24, and dispositional findings numbers 6 and 7.
In finding of fact number 18, the trial court found that respondents "refused (discouraged) to allow home visitation by the social worker after August 2005." Similarly, in finding of fact number 25(iv), the court found that "[h]ome visits were discouraged by the mother." We find sufficient evidence in the record to support the trial court's findings. Mucciacciaro testified that in June, 2005, she attempted to set up a home visit with respondents but was told that "it wasn't convenient." Mucciacciaro offered to come "after regular hours," but was again told that it "wasn't convenient." Mucciacciaro finally asked if there was any time that she could come, and was told, "No, it's not convenient." Similarly, in August, 2005, Mucciacciaro attempted to set up home visits, and respondents told her, "It's a bad week. . . ." Again, Mucciacciaro offered to visit after regular hours, but respondents continued to tell her it was a "bad week." Mucciacciaro testified that "I don't think I was ever able to schedule a visit  home visit after that."
In finding of fact number 25(iii), the trial court found that respondents were "consisitently [sic] 15 minutes late to the visitations over the last several months for the announced reason that traffic had made them late." We find sufficient evidence in the record to support the trial court's finding. A DSS court report stated that while respondents attended all visitations, "over the last several months they are consistently on average 15 minutes late to the visitations, most of the time saying that traffic had made them late." Additionally, Mucciacciaro testified that respondents consistently visited N.G., but were "late some." Moreover, respondent-father admitted at the hearing that they were late for visits because they had to drive from New Jersey.
Respondents additionally challenge dispositional finding of fact number 5, in which the trial court stated that it had "reviewed the exhibits offered by the parents but [did] not find the same to be credible on the issue of the juvenile's safety and best interest." Respondent-mother contends that the evidence was competent, and that she "cannot determine on what basis these exhibits were not `credible'. . . ." We hold that the trial court did not err. It is the "judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C.App. 439, 441, 322 S.E.2d 434, 435 (1984) (citation omitted).
In finding of fact number 27, the trial court found that DSS "was unable to exercise further efforts to prevent the filing of the petition herein and placement of the juvenile in care was necessary for the protection and safety of the juvenile." Similarly, adjudicatory conclusion of law number 3 states that DSS was "unable to prevent placement of the juvenile into out of home care, and the filing of the petition was necessary to protect the juvenile and the placement of the juvenile in care could not be prevented." Respondents contend that N.G. was being appropriately cared for and removal was not necessary for her protection. We disagree. As we have noted, respondents' arguments regarding L.G.'s injuries are not persuasive. Furthermore, Dr. Cooper testified that respondents' failure to acknowledge culpability for L.G.'s injuries put N.G. at risk of injury. When combined with the fact that respondents did not cooperate with DSS and failed to improve their parenting skills, the evidence supports the trial court's finding of fact and conclusion of law.
In dispositional findings of fact 6, 8, and 9, the trial court found that a plan of reunification would be futile, custody should be awarded to DSS, and visitation should be terminated. Respondent-mother renews her *50 contention that her unwillingness to admit causing L.G.'s injuries should not result in the cessation of reunification efforts. Respondent-mother also argues that she should not be faulted for DSS's refusal to approve alternative programs. Respondent-mother finally asserts that the trial court should have considered a kinship placement. We find respondent-mother's arguments unpersuasive. The question of fault for L.G.'s injuries is not before this court. Moreover, DSS presented evidence that these alternative programs were not comparable.
The trial court also did not err by declining a kinship placement. DSS completed kinship assessments with all relatives suggested by respondents. Indeed, the record shows that "all suggested kinship placements have been exhausted." Family placement was inappropriate because the family members did not believe that N.G. was in need of protection, and relative placement would therefore not ensure the child's safety. Accordingly, because competent evidence in the record supports the trial court's findings of fact and conclusions of law, the assignments of error are overruled.

II.
Respondents next argue that the trial court erred by adjudicating N.G. a neglected juvenile. Respondent-mother argues that the trial court erred in adjudicating N.G. neglected based solely on L.G.'s injuries in the absence of clear, cogent and convincing evidence that respondents inflicted the injuries. Respondent-father argues that the trial court must be reversed because the evidence on probability of neglect is insufficient. Respondents both assert that N.G. was found to be healthy and well-cared for when removed from their home.
After careful review of the record, briefs, and contentions of the parties, we affirm. In an abuse, neglect, and dependency case, review is limited to the issue of whether the conclusion is supported by adequate findings of fact. Helms, 127 N.C.App. at 511, 491 S.E.2d at 676. "Neglected juvenile" is defined in N.C. Gen.Stat. § 7B-101(15) as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15)(2005). Section 7B-101(15) affords "the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." In re McLean, 135 N.C.App. 387, 395, 521 S.E.2d 121, 126 (1999). "In cases of this sort [involving a newborn], the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." Id. at 396, 521 S.E.2d at 127.
The question of responsibility for L.G.'s injuries is not currently before us. Moreover the trial court adopted as fact testimony that there is a high rate of recidivism where parents do not acknowledge culpability for the injuries a child incurred while in their care. The trial court then found that respondents continued to deny responsibility for L.G.'s injuries. Therefore, the findings relating to the prior adjudication of neglect and subsequent termination of parental rights as to L.G. and respondents' failure to comply with their case plan, when combined with respondents' failure to acknowledge culpability for L.G.'s injuries, support the conclusion that N.G. was a neglected juvenile based on the high risk of future abuse or neglect. See In re P.M., 169 N.C.App. 423, 427, 610 S.E.2d 403, 406 (2005) (affirming adjudication of neglect where respondent violated court-ordered protection plans and failed "to take responsibility for harm that befell her children as a result of her conduct"); McLean, 135 N.C.App. at 396, 521 S.E.2d at 127 (noting that substantial risk of future neglect must be based on the historical facts of the case).
*51 We acknowledge that the fact of prior abuse, standing alone, is not sufficient to support an adjudication of neglect. Indeed, this Court recently held that although evidence of prior abuse or neglect is a relevant factor worthy of consideration, the doctrine of collateral estoppel permits the trial court to rely on only those findings of fact from prior orders that "were established by clear and convincing evidence." In re A.K., 178 N.C.App. 727, 731, 637 S.E.2d 227, 229 (2006).
However, this case is easily distinguished from In re A.K. In that case, "the trial court did not accept any formal evidence in addition to its consideration of the prior court orders concerning [the child previously removed from the home], and the only order concerning [the child previously removed from the home] that contained findings by the clear and convincing standard of proof was from a hearing occurring many months earlier." Id. at 732, 637 S.E.2d at 230. In this case, the trial court also addressed (1) respondents' failure to participate in the PRIDE program, (2) respondents' attempts to hide the fact of the mother's pregnancy, (3) respondents' failure to inform DSS with a change of address, (4) respondents' continued refusal to accept responsibility for L.G.'s injuries, (5) respondents' failure to participate in anger management classes, (6) respondents' consistent tardiness to visits, (7) respondents' attempts to discourage home visits from DSS, and (8) evidence on recidivism rates. The cumulative weight of this evidence is sufficient to support an adjudication of neglect. Accordingly, we find that the trial court did not err by adjudicating N.G. a neglected juvenile.

III.
Respondents next argue that the evidence and findings of fact do not support that the trial court's conclusion of law that reunification efforts should cease and that visitation should be terminated. We are not persuaded.
N.C. Gen.Stat. § 7B-507(b) states that:
In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time.
N.C. Gen.Stat. § 7B-507(b)(2005). The trial court may "only order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts." In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003). "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M., ___ N.C.App. ___, ___, 644 S.E.2d 588, 594 (2007). "At the disposition stage, the trial court solely considers the best interests of the child. Nonetheless, facts found by the trial court are binding absent a showing of an abuse of discretion." In re Pittman, 149 N.C.App. 756, 766, 561 S.E.2d 560, 567 (2002) (citations and quotations omitted). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." In re Robinson, 151 N.C.App. 733, 737, 567 S.E.2d 227, 229 (2002) (citations and quotations omitted).
Here, the trial court found in dispositional finding of fact number 6 that:
DSS has been involved with the respondent parents since 2001 when their first child was placed into protective custody. They have failed to cooperate with the various social workers and failed to fully comply with family service plans. They did not make reasonable efforts at reunification *52 in their first child's care. Although they entered into a service agreement (updates) with their second child, they have not met the goals outlined in the service plans within a reasonable time. They concealed their third child from DSS and expressly failed to tell the truth about the possible pregnancy. The parents have not recognized appropriate responsibility or involvement in the injuries to their first child. They deny responsibility or involvement with the injuries but placed the blame for the injuries on others without any reliable evidence being produced. They refused an appropriate course of treatment to obtain parental education, supervision, instruction and behavioral counseling. There has not been an adequate attempt on their behalf to cooperate with a safety plan to assure the juvenile's safety. Their lack of candor, truthfulness and cooperation further complicates the issue of the juvenile's safety if placed with the parents.
As discussed previously, we have concluded that dispositional finding of fact number 6 was supported by clear, cogent, and convincing evidence in the record. We further conclude that the finding supports the trial court's conclusion that reunification efforts would be futile.
Respondents further contend that the trial court erred by ceasing visitation. "This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." In re C.M., ___ N.C.App. at ___, 644 S.E.2d at 595. In light of the historical facts of the case, respondents' failure to accept responsibility for L.G.'s injuries, their failure to cooperate with DSS and comply with their case plan, and the trial court's conclusion that reunification efforts should cease, we hold that the trial court's decision to cease visitation was not manifestly unsupported by reason. Accordingly, we hold that the court did not abuse its discretion in finding it to be in the best interests of the juvenile to cease reunification efforts and visitation.
Affirmed.
Judge McGEE concurs.
Judge TYSON dissents by separate opinion.
TYSON, Judge dissenting.
The majority's opinion holds that: (1) DSS presented clear, cogent, and convincing evidence to support the trial court's findings of fact and conclusions of law; (2) the trial court did not err by adjudicating N.G. to be a neglected juvenile; and (3) the trial court did not abuse its discretion in finding reunification efforts to be futile and that it was in N.G.'s best interests to cease reunification efforts and visitation with respondents. I disagree and respectfully dissent.

I. Adjudicatory Hearing

A. Standard of Review
The trial court's and our standard of review is well established.
The first stage [of juvenile abuse, neglect, and dependency actions] is the adjudicatory hearing. If DSS presents clear and convincing evidence of the allegations in the petition, the trial court will adjudicate the child as an abused, neglected, or dependent juvenile. If the allegations in the petition are not proven, the trial court will dismiss the petition with prejudice and, if the juvenile is in DSS custody, returns the juvenile to the parents.
In re A.K., 360 N.C. 449, 454-55, 628 S.E.2d 753, 757 (2006) (internal citations omitted).
During the adjudicatory phase, the court takes evidence, makes findings of fact, and determines the existence or nonexistence of grounds for termination. N.C. Gen.Stat. § 7B-1109(e) (2005). The burden of proof rests upon DSS in this phase, and the court's findings must be based on clear, cogent, and convincing evidence. N.C. Gen.Stat. § 7B-1109(f) (2005).
The standard of review on appeal is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether its conclusions of law are supported by its findings of fact. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), disc. rev. denied and appeal dismissed, 353 N.C. 374, 547 S.E.2d 9 (2001). *53 "This intermediate standard is greater than the preponderance of the evidence standard required in most civil cases, but not as stringent as the requirement of proof beyond a reasonable doubt required in criminal cases." In re Montgomery, 311 N.C. 101, 109-10, 316 S.E.2d 246, 252 (1984) (citing Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). "The trial court's `conclusions of law are reviewable de novo on appeal.'" In re D.M.M., 179 N.C.App. 383, ___, 633 S.E.2d 715, 716 (2006) (quoting In re D.H., 177 N.C.App. 700, 703, 629 S.E.2d 920, 922 (2006)).

B. Analysis
Adjudicatory findings of fact numbered 5 and 27 are not supported by clear, cogent, and convincing evidence. In re A.K., 360 N.C. at 454-55, 628 S.E.2d at 757.
The trial court's adjudicatory finding of fact numbered 5 states:
[N.G.] has lived in an environment injurious to her welfare when she was allowed to live in a home where another child [L.G.] had been subjected to abuse and neglect by an adult who regularly lives in that home without that adult having received adequate treatment of the condition which led to the abusive acts upon the older sibling.

(Emphasis supplied).
If DSS makes no showing that neglect has continued at the time of the hearing, evidence of changed circumstances must be considered "in light of the evidence of prior neglect and the probability of a repetition of neglect." In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984). Here, DSS made no showing of any neglect of N.G. prior to or at the time of the hearing and respondents have proved they made reasonable efforts and received "adequate treatment" to alleviate the conditions that led to N.G.'s removal from their home. Id.
N.G. was healthy and uninjured when she was removed from respondents' home and placed into DSS's care at two months of age. All allegations of neglect were derived and solely based upon another child having been previously removed from respondents' home.
Respondents completed parenting, domestic violence, and anger management classes after L.G. was removed from the respondents' home. Respondents moved to New Jersey in September 2005 and have been commuting to North Carolina for their weekly visits with N.G. since that time. Respondents have not missed any scheduled visits. Adjudicatory finding of fact numbered 5 is not supported by clear, cogent, and convincing evidence. The evidence clearly compels a contrary finding.
The trial court's adjudicatory finding of fact numbered 27 states, "[DSS] was unable to exercise further efforts to prevent the filing of the petition herein and placement of the juvenile in care was necessary for the protection and safety of the juvenile."
No family services case plan was established for N.G. The case plan cited by the trial court in its adjudicatory order pertained to J.G., respondents' second child. This case plan was established prior to DSS obtaining custody of N.G. The record shows DSS made no attempt to implement or restate this case plan for N.G.
The case plan for J.G. states that "[respondents] shall participate in Pride program or other comparable program[s] in Cumberland Co. or other area program upon consultation with DSS [and Guardian ad Litem]." (Emphasis supplied). DSS claimed that all other programs were not comparable because, inter alia, those programs did not require random drug testing. No allegations were made and no evidence was shown of any drug abuse by either of respondents. Respondents were not required by the case plan or order to submit to random drug testing. Respondents were unable to participate in the Family PRIDE program due to scheduling conflicts of that program with respondent-father's work schedule.
DSS refused to respond to suggestions and requests to review multiple alternative agencies and providers whose programs would allow respondents to maintain employment. Undisputed evidence shows respondents submitted two written requests for DSS to review listed programs as "comparable" substitutes for the Family PRIDE Program. The first request, dated 10 November 2005, listed *54 fourteen agencies and providers conducting parenting and anger management classes. The second request, dated 7 December 2005, listed eleven additional possible programs. No evidence in the record shows DSS ever reviewed or responded to any of respondents' requests.
Respondents attended and successfully completed parenting, domestic violence, and anger management classes as required by J.G.'s case plan with Multicultural Community Development Services, a parenting and family development center. While DSS never deemed Multicultural Community Development Services to be a "comparable" provider, the record shows DSS never made any attempt to advise or help respondents find an alternative program that did not conflict with respondent-father's employment; and consequently, respondents' ability to maintain housing and basis of support for their family. Adjudicatory finding of fact numbered 27 is not supported by clear, cogent, and convincing evidence. The evidence clearly compels a contrary result and admonition to DSS to consult, respond, and cooperate with respondents on alternative treatment programs.
Reviewed de novo, the trial court's adjudicatory conclusions of law numbered 2 and 3 state:
2. [N.G.] is a neglected as defined by N.C. Gen.Stat. 7B-101(15) because the juvenile has been allowed to live in an environment injurious to the juvenile's welfare.
3. [DSS] was unable to prevent placement of [N.G.] into out of home care, and the filing of the petition was necessary to protect [N.G.] and the placement of [N.G.] in care could not be prevented.
Since adjudicatory findings of fact numbered 5 and 27 are not supported by clear, cogent, and convincing evidence, these findings cannot support the trial court's conclusions of law. Under de novo review, the trial court's conclusions of law are not supported by the findings of fact based upon clear, cogent, and convincing evidence and are error. The trial court's unsupported conclusions and adjudication of N.G. to be a neglected juvenile should be reversed.

II. Dispositional Hearing
Because the trial court's adjudicatory findings of fact do not support its conclusions of law, the trial court's dispositional order must also be reversed. Presuming, as the majority's opinion holds, that the trial court's conclusions of law are supported by the findings of fact and its conclusions and adjudication of N.G. to be a neglected juvenile should be affirmed, the trial court also erred when it ordered further reunification efforts would be futile and ceased respondents' visitation.
We have recognized the constitutional protection afforded to family relationships. See In re Webb, 70 N.C.App. 345, 350, 320 S.E.2d 306, 309 (1984) ("[T]he Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and tradition." quoting Moore v. City of East Cleveland, 431 U.S. 494, 503-04, 97 S.Ct. 1932, 52 L.Ed.2d 531, 540 (1977)). The purposes and policies of the Juvenile Code recited under N.C.G.S. § 7B-100 are applicable to permanency planning hearings.
The trial court's findings and conclusions were not supported by the evidence, did not consider changed conditions, and did not recognize that the purpose of the Juvenile Code is "return of juveniles to their homes consistent with preventing the unnecessary or inappropriate separation of juveniles from their parents." See N.C. Gen.Stat. § 7B-100(4).
In re Eckard, 148 N.C.App. 541, 547, 559 S.E.2d 233, 236-37 (emphasis supplied), disc. rev. denied, 356 N.C. 163, 568 S.E.2d 192 (2002). Respondents informed DSS of their alternate compliance with J.G.'s case plan and provided the trial court with undisputed evidence of the treatment they received and completed. Respondents made diligent efforts to remedy the causes that led to N.G.'s removal. Respondents cannot be limited by DSS to a single source service provider whose program schedule conflicts with and jeopardizes respondent-father's employment and means of support. J.G.'s case plan expressly allows for "other comparable program[s]" and "other area program[s]." DSS never responded to two distinct written requests *55 to review or recommend alternative plans or service providers. The trial court erred when it ordered that reunification efforts would be futile and that visitation cease.

III. Conclusion
N.G. was healthy and unharmed when DSS removed her from respondents' home. No case plan was established or restated for N.G. No clear, cogent, and convincing evidence supports the trial court's adjudicatory findings of fact that "[N.G.] lived in an environment injurious to her welfare. . . ." and the "placement of [N.G.] in care was necessary for [her] protection and safety. . . ." No evidence exists and no finding of fact was made that any alleged neglect continued at the time of the hearing.
Under de novo review, the trial court's findings of fact are not supported by clear, cogent, and convincing evidence, and these findings do not support the conclusions of law that "[N.G.] is a neglected as defined by N.C. Gen.Stat. 7B-101(15). . . ." and "the filing of the petition was necessary to protect [N.G.]. . . ." The trial court's adjudicatory order should be reversed.
Because the trial court erred in entering its adjudicatory order, it also erred in concluding at disposition that "[t]he development of a plan of reunification of the child with the parents would be futile" and "[f]urther parental visitation should be ceased." Respondents drove from New Jersey to visit N.G. and never missed a weekly visitation. The trial court's dispositional order should be reversed.
N.C. Gen.Stat. § 7B-100(4) (2005) requires DSS to assist respondents and presumes reunification of N.G. with her parents will occur. DSS failed to respond to respondents' repeated requests to review alternative programs with schedules that would not jeopardize respondent-father's employment and failed to overcome the statutory presumption of reunification. Respondents made substantial progress toward alleviating the conditions that led to N.G.'s removal from respondents' home. No evidence was presented to support the conclusion that further efforts to reunify N.G. with her parents would be futile. I vote to reverse the trial court's order and respectfully dissent.