An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-366

Filed 17 December 2025

Wilkes County, No. 20JA000145-960

IN THE MATTER OF: S.A.B.S.

Appeal by Respondent-Parents from Order entered 14 January 2025 by Judge Donna L. Shumate in Wilkes County District Court. Heard in the Court of Appeals 29 October 2025.

> *Erika Leigh Hamby for Petitioner-Appellee Wilkes County Department of Social Services.*
>
> *Patricia M. Propheter for Respondent-Appellant Mother.*
>
> *Sean P. Vitrano for Respondent-Appellant Father.*
>
> *Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by J. Mitchell Armbruster, for Guardian ad litem.*

HAMPSON, Judge.

### Factual and Procedural Background

Respondent-Parents appeal from a Permanency Planning Order eliminating reunification from the minor child's permanent plan and granting legal and physical

custody of the minor child to her foster parents. The Record before us tends to reflect the following:

Sunny[1] was born to Respondent-Parents on 3 November 2020. On 4 November 2020, before Respondent-Parents had the opportunity to bring Sunny home from the hospital, Wilkes County Department of Social Services (DSS) filed a petition alleging Sunny was a neglected and dependent juvenile. DSS alleged Respondent-Parents moved to North Carolina in September 2020, did not have any relatives in North Carolina, and lacked community support and resources to adequately care for the juvenile. DSS also raised concerns about Respondent-Parents' mental health. The minor child was placed in nonsecure custody and in a licensed foster home that same day.

Pursuant to hearings held on 26 April and 24 May 2021, Sunny was adjudicated a dependent juvenile but not neglected.[2] At disposition, the trial court found Respondent-Parents had complied with some, but not all, parts of their respective case plans. The trial court granted Respondent-Parents hour-long supervised visits with the juvenile once a week and further ordered Respondent-Parents to undergo psychological evaluations.[3]

---

[1] A pseudonym agreed upon by the parties.

[2] Although our General Statutes mandate adjudication orders should be entered within thirty days of the adjudication hearing, the Adjudication Order was not filed until 16 May 2022—almost one year later. *See* N.C. Gen. Stat. § 7B-807(b) (2023).

[3] The disposition hearing was held on 12 July 2021, but the Disposition Order was not entered until 6 April 2022.

The first permanency planning hearing was held on 25 October 2021. On the day of the hearing, the trial court entered a temporary order addressing visitation pending the entry of a formal order. However, as of 7 July 2022, the trial court had not yet entered a formal, written permanency planning order. Respondent-Father filed a motion to review, requesting the order be reduced to writing.

The trial court entered the written permanency planning order on 13 July 2022. *In re S.A.B.S.*, 290 N.C. App. 552, 892 S.E.2d 110, 2023 WL 6120279, at *2 (2023) (unpublished). Based on Respondent-Parents' consent and the length of time Sunny had been with her foster parents, the trial court decided guardianship should be granted to the foster parents. *Id.* The trial court concluded "neither the minor child's best interests nor the rights of any party require that review hearings be held every six months[.]" *Id.*

Respondent-Father appealed the trial court's order, arguing he did not consent to waiving further hearings. This Court agreed and, consequently, vacated the order with instructions to hold a new evidentiary hearing. *Id.* at *4.

The next permanency planning hearing following remand was conducted on 25 March 2024. In its order filed 5 June 2024, the trial court found Respondent-Parents had successfully completed all aspects of their case plans except that Respondent-Father was "not compliant with medication management." The trial court found returning Sunny to Respondent-Parents' home would be contrary to her health, safety, and well-being "due to the father's need to continue with his mental health

treatment and concerns for the mother's low IQ." However, it "could be possible for [Sunny] to be returned to a parent within the next six (6) months if the parents demonstrate an ability to provide proper care and supervision for the minor child, specifically the ability to care for her special needs."

The trial court adopted a primary permanent plan of reunification and a secondary plan of guardianship. It continued Sunny in DSS custody and granted Respondent-Parents supervised visits once weekly for one hour or twice monthly for two hours. The visits could be "semi-supervised to allow the parents and child to interact with little outside interference."

The next permanency planning hearing was held on 6 August 2024. DSS recommended custody be awarded to the foster parents as a primary permanent plan with a secondary plan of reunification. DSS also recommended Respondent-Parents receive unsupervised overnight visitation every other weekend. The GAL recommended a primary plan of guardianship and a secondary plan of custody with the foster parents.

Despite finding Respondent-Parents had fully complied with their case plans, treatment recommendations, and had appropriate visits with the juvenile over the course of the last year, the trial court ultimately found reunification would be contrary to the juvenile's health and safety and removed reunification from the permanent plan. The trial court changed the primary permanent plan to custody with an approved caregiver and the secondary plan to guardianship. On 14 January

2025, the trial court entered an Order awarding legal and physical custody to the foster parents. Respondent-Parents were granted unsupervised visitation weekly and on holidays. Respondent-Parents timely filed Notice of Appeal.

## Issues

The issues on appeal are whether: (I) the trial court's Findings support its decision to eliminate reunification from the minor child's permanent plan; and (II) the trial court erred by conducting a best-interest analysis without first determining, by clear and convincing evidence, Respondent-Father was unfit to parent or had otherwise acted inconsistently with his constitutionally protected status as a parent.

## Analysis

### I. Respondent-Mother

"Our review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law." *In re J.H.*, 244 N.C. App. 255, 268, 780 S.E.2d 228, 238 (2015) (quotation marks and citation omitted). "If the trial court's findings of fact are supported by ample, competent evidence, they are binding on appeal, even though there may be evidence to the contrary." *In re S.C.R.*, 198 N.C. App. 525, 531, 679 S.E.2d 905, 909 (2009) (quotation marks and citation omitted). We review the trial court's conclusions of law de novo. *In re B.S.O.*, 234 N.C. App. 706, 708, 760 S.E.2d 59, 62 (2014) (citation omitted).

"The trial court's dispositional choices—including the decision to eliminate

reunification from the permanent plan—are reviewed for abuse of discretion." *In re A.P.W.*, 378 N.C. 405, 410, 861 S.E.2d 819, 825-26 (2021) (citing *In re J.H.*, 373 N.C. 264, 268, 837 S.E.2d 847, 850 (2020)). "An abuse of discretion occurs when the trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." *In re J.H.*, 373 N.C. at 268, 837 S.E.2d at 850 (quotation marks and citation omitted). Moreover, "[t]he trial court may 'only order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts.' " *In re N.G.*, 186 N.C. App. 1, 10, 650 S.E.2d 45, 51 (2007) (quoting *In re Weiler,* 158 N.C. App. 473, 477, 581 S.E.2d 134, 137 (2003)).

Respondent-Mother argues the trial court's Findings of Fact are not supported by competent evidence and do not support the trial court's Conclusions of Law. Respondent-Mother first challenges Finding of Fact 10, which states Respondent-Parents have failed to attend most of Sunny's medical appointments[4] despite "hav[ing] the ability" to do so:

> 10. Although the parents have the ability to attend [Sunny's] medical appointments, they have missed all but two appointments. Some of the appointments are in Winston Salem about an hour away. The parents do not have driver's licenses or a car. Public transportation would be cost prohibitive. There have been local appointments that the parents also did not attend.

---

[4] The juvenile was born with a medical condition which requires elevated care and "a lot of appointments[.]"

Respondent-Mother argues the evidence shows Respondent-Parents do not have the ability to attend Sunny's appointments. We agree. In fact, the latter-half of this same Finding states Respondent-Parents "do not have driver's licenses or a car." Indeed, the fact that Respondent-Parents do not have driver's licenses or a car suggests Respondent-Parents do *not* have the ability to attend Sunny's medical appointments in Winston-Salem and likely explains their failure to do so. Further, as to the "local appointments," the foster mother testified she was "concerned" because Respondent-Parents had missed these appointments, but there was no evidence admitted at the hearing as to why Respondent-Parents were not present for those appointments—which could also be explained by Respondent-Parents' lack of transportation. Thus, we agree the Finding is not supported by competent evidence and will disregard it in our analysis.

Respondent-Mother also challenges Finding of Fact 25, which states DSS has made reasonable efforts to prevent Sunny's placement outside Respondent-Parents' home. Respondent-Mother argues "[t]he sheer amount of time it took to get almost all orders signed and filed" demonstrates a failure to make reasonable efforts towards reunification on the part of DSS.

In making its oral findings at the hearing, the trial court stated DSS had "offered a case plan, [and] they have supervised visits." The trial court did not detail any additional efforts in its written Order, but the 5 June 2024 permanency planning order describes the following efforts: "development of Family Services Case Plans;

drug screens; creation of visitation schedules; HUD letter for the parents; and participation in team meetings to assess the child's needs and how best to meet those needs." Additionally, the DSS Court Report describes home visits, agency review meetings, and supervised visits.

While we agree with Respondent-Mother that the time it took to file many of the orders in this case was exceedingly long, in light of the evidence DSS has made reasonable efforts toward reunification of the minor child with Respondent-Parents, we cannot conclude this Finding is unsupported by competent evidence. *In re S.C.R.*, 198 N.C. App. at 531, 679 S.E.2d at 909 (explaining findings of fact may be binding even where there is contrary evidence). Nonetheless, we take this opportunity to "strongly caution against [delayed filings], as it defeats the purpose of the time requirements specified in the statute, which is to provide parties with a speedy resolution of cases where juvenile custody is at issue." *In re B.M.*, 168 N.C. App. 350, 355, 607 S.E.2d 698, 702 (2005).

Respondent-Mother further argues the trial court's Findings do not support its decision to remove reunification from the juvenile's permanent plan. We agree.

"Reunification shall be a primary or secondary plan unless . . . the court makes written findings that reunification efforts . . . would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b) (2023). Here, the trial court made the ultimate Finding that "[r]eturn of the child to [Respondent-Parents'] home would be contrary to the child's health, safety, and wellbeing." *See In re G.C.*, 384 N.C. 62,

67, 884 S.E.2d 658, 662 (2023) (identifying finding that juvenile "does not receive proper care, supervision, or discipline from her parents" as ultimate finding). " 'A trial court's finding of an ultimate fact is conclusive on appeal if the evidentiary facts reasonably support the trial court's ultimate finding [of fact].' " *Id.* at 65, 884 S.E.2d at 661 (alteration in original) (footnote omitted) (quoting *State v. Fuller*, 376 N.C. 862, 864, 855 S.E.2d 260, 263 (2021)).

The trial court's Findings establish Sunny was removed from Respondent-Parents' care due to concerns about Respondent-Parents' "mental abilities and their ability to care for a child." The trial court further found "the parents are unable due to their IQ's and mental health problems to provide for the care and maintenance of the minor child." Notably, in *In re Eckard*, this Court, in concluding the evidence did not support the trial court's decision to eliminate reunification from the juvenile's permanent plan, observed that "despite respondent mother's low I.Q., she has no severe mental health issues that would interfere with her ability to parent[.]" 148 N.C. App. 541, 545, 559 S.E.2d 233, 235 (2002). In the instant case, there is no evidence Respondent-Mother has "severe" mental health issues,[5] and DSS Social Worker Kirsten Shepherd (SW Shepherd) testified DSS was concerned solely with Respondent-Mother's I.Q.—not her mental health.

---

[5] The trial court found Respondent-Mother has been diagnosed with "unspecified schizophrenia" and "other psychotic disorder[.]" This Finding reflects information from an assessment Respondent-Mother underwent three years prior to the hearing, in August 2021; no testimony was elicited about these diagnoses at the permanency planning hearing.

Nor do the trial court's Findings indicate Respondent-Mother has significant issues with parenting the juvenile. Although the evidence shows Respondent-Mother had previously "struggled" with interacting with Sunny and their youngest child[6] at the same time, SW Shepherd testified Respondent-Mother's abilities had improved by the time of the hearing. In fact, SW Shepherd testified Respondent-Parents "parent at visits[,]" there were no concerns with their parenting at visits, and any time DSS had "ever had any sort of concern, [it was addressed] with [Respondent-Parents] and they correct it."

At most, the trial court's unchallenged Findings establish Respondent-Mother has a low I.Q. The trial court's Findings do not explain how this has made Respondent-Mother "unable . . . to provide for the care and maintenance of the minor child" or why returning Sunny to Respondent-Mother's care would be contrary to the juvenile's health and safety.

Thus, the trial court's evidentiary Findings do not support its ultimate Finding that returning the juvenile to Respondent-Mother's care would be contrary to the juvenile's health and safety. Therefore, the Findings do not support eliminating reunification from the permanent plan. Consequently, the trial court abused its

---

[6] Respondent-Parents have a younger child who was approximately one year old at the time of the 6 August 2024 Permanency Planning Hearing.

discretion by eliminating reunification from the permanent plan.[7]

II.     Respondent-Father

"A parent has an 'interest in the companionship, custody, care, and control of [his or her children that] is protected by the United States Constitution.' " *Boseman v. Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 502 (2010) (alteration in original) (quoting *Price v. Howard*, 346 N.C. 68, 73, 484 S.E.2d 528, 531 (1997)).  "So long as a parent has this paramount interest in the custody of his or her children, a custody dispute with a nonparent regarding those children may not be determined by the application of the 'best interest of the child' standard."  *Id.* at 549, 704 S.E.2d at 503 (citing *Price*, 346 N.C. at 79, 484 S.E.2d at 534).

"[A] natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status."  *David N. v. Jason N.*, 359 N.C. 303, 307, 608 S.E.2d 751, 753 (2005).  Thus, "[t]he trial court must clearly 'address whether respondent is unfit as a parent or if her conduct has been inconsistent with her constitutionally protected status as a parent, should the trial court . . . consider granting custody or guardianship to a nonparent.' "  *In re K.L.*, 254 N.C. App. 269,

---

[7] Because we vacate the Order as to Respondent-Mother, we do not address her arguments as to whether awarding legal and physical custody of the juvenile to the foster parents was in the juvenile's best interest.

283, 802 S.E.2d 588, 597 (2017) (second alteration in original) (quoting *In re P.A.*, 241 N.C. App. 53, 66-67, 772 S.E.2d 240, 249 (2015)).

In the instant case, Respondent-Father's sole argument is the trial court did not find he is unfit to parent or has acted inconsistently with his constitutional right to parent before awarding custody of Sunny to her foster parents. The right to such findings is generally waived unless first raised in the trial court. *In re J.N.*, 381 N.C. 131, 133, 871 S.E.2d 495, 497-98 (2022).

At the hearing, counsel for Respondent-Father, while asking the trial court to reunify the juvenile with Respondent-Parents, expressly argued: "The parents have done nothing contrary to their constitutional rights." The GAL, without citing to any authority, argues "[t]he citing of the word 'constitutional' is not an automatic legal argument in itself[.]"[8] The GAL further argues that even if Respondent-Father preserved his constitutional argument, the trial court made sufficient findings as to Respondent-Father's fitness as a parent, specifically:

> 24. The Court has no doubt that the parents love the minor child. However, the parents are unable due to their IQ's and mental health problems to provide for the care and maintenance of the minor child. Further treatment or education would not resolve those issues for the parents.
>
> . . . .
>
> 28. Return of the child to the parents' home would be contrary to

---

[8] For its part, DSS offers no substantive arguments on appeal. Rather, DSS asserts the trial court erred in failing to award joint custody of the juvenile to Respondent-Parents and the foster parents.

the child's health, safety, and wellbeing.

Presuming, without deciding, these Findings constitute a determination that Respondent-Father is unfit to parent, we agree with Respondent-Father that the determination is not supported by clear and convincing evidence.[9]

"A trial court's determination that a parent has acted inconsistently with his or her constitutionally protected status as the parent is subject to de novo review, and must be supported by clear and convincing evidence[.]" *In re B.R.W.*, 381 N.C. 61, 77, 871 S.E.2d 764, 775 (2022) (quotation marks and citations omitted) (reviewing determination parent had acted inconsistently with her constitutionally protected status for whether it was supported by the findings of fact). "The clear and convincing standard requires evidence that should fully convince. This burden is more exacting than the preponderance of the evidence standard generally applied in civil cases, but less than the beyond a reasonable doubt standard applied in criminal matters." *In re K.L.*, 254 N.C. App. at 283, 802 S.E.2d at 597 (citation and quotation marks omitted).

Here, the Findings of Fact[10] which the GAL purports go to Respondent-Father's fitness as a parent are not supported by clear and convincing evidence. As to Finding 24, we note Respondent-Father has not had much opportunity to

---

[9] The GAL only asserts the trial court found Respondent-Father is "unfit," not that Respondent-Father acted inconsistently with his constitutional right to parent. As such, our analysis solely concerns whether the Order supports a conclusion Respondent-Father is unfit to parent.

[10] Although the relevant determinations are labeled "Findings of Fact," "[i]f the lower tribunal labels as a finding of fact what is in substance a conclusion of law, we review that 'finding' as a conclusion *de novo*." *In re Estate of Sharpe*, 258 N.C. App. 601, 605, 814 S.E.2d 595, 598 (2018) (citation omitted).

demonstrate his ability to provide for the care and maintenance of the minor child. Nonetheless, the trial court's other Findings and the Record evidence tend to show Respondent-Father: is employed, has appropriate housing, is current on child support, provides appropriate care for his younger child, loves and cares for the minor child, and has had successful visits with Sunny in the months leading up to the hearing.

Moreover, there is no evidence to support the premise that "[f]urther treatment would not resolve" Respondent-Father's mental health issues. To the contrary, the Record shows Respondent-Father is on a "low dose" of his current medication, suggesting his treatment could be elevated if needed. Additionally, SW Shepherd testified Respondent-Father's behavior has improved since adhering to his treatment regimen. Thus, this Finding is not supported by clear and convincing evidence.

Likewise, Finding 28 is not supported by clear and convincing evidence. As we opined with respect to Respondent-Mother, the trial court's Findings do not explain how returning Sunny to Respondent-Father's care would be contrary to her health and safety. Rather, the trial court's Findings and the Record evidence tend to favor reunification. Indeed, the trial court, in announcing its ruling, stated: "This is not a case where parents have done something wrong[.]"

Here, the only unchallenged Finding which arguably supports a conclusion Respondent-Father is unfit to parent indicates Respondent-Father "[does] not believe [Sunny's] medical diagnoses are real or legitimate[.]" However, the trial court did not

explain how this alleged belief has impacted Respondent-Father's parenting or affected the juvenile. Further, the evidence at the hearing shows any comments Respondent-Father has made downplaying the juvenile's medical diagnoses were not made in front of the juvenile and, as mentioned above, have decreased in frequency since Respondent-Father has started consistently taking his medication. Indeed, Respondent-Father consistently takes his *own* medication despite having expressed "he does not feel he needs medication." Thus, this Finding does not tend to support a conclusion that Respondent-Father is unfit to parent.

Additionally, as we articulated above, the trial court's Finding as to Respondent-Father's failure to attend Sunny's medical appointments is not supported by the evidence. We agree with Respondent-Father that the evidence shows Respondent-Parents do not have a car or driver's licenses, and public transportation is prohibitively expensive.

Thus, the trial court's purported Conclusion that Respondent-Father is unfit to parent is not supported by clear and convincing evidence.[11] Therefore, the trial

---

[11] We also note that "in most juvenile cases, the underlying facts that support the adjudication of abuse, neglect, or dependency also will satisfy the constitutional criteria." *In re K.C.*, 386 N.C. 690, 696, 909 S.E.2d 170, 175 (2024). Here, the trial court's Findings regarding the underlying facts of the dependency adjudication simply indicate "[t]here were not questions of a lack of housing or other issues, but rather questions about the parents' mental abilities and their ability to care for the child[ ]" and do not clearly support a conclusion that Respondent-Father is unfit to parent Sunny. Moreover, no party has argued the underlying adjudication supports a conclusion Respondent-Father is unfit to parent, thus, we consider any such argument waived. We further note: "a finding that a parent is unfit or acted inconsistent with his or her constitutionally protected status is nevertheless required, even when a juvenile has previously been adjudicated neglected and dependent." *In re R.P.*, 252 N.C.

court erred in conducting a best-interest analysis. *See Boseman*, 364 N.C. at 549, 704 S.E.2d at 503 (citation omitted).

## Conclusion

Accordingly, for the foregoing reasons, we vacate the 14 January 2025 Permanency Planning Order as to both Respondent-Parents and remand to the trial court "to decide whether to enter a new order with sufficient findings based on the record or to change the court's conclusions because the court cannot make the necessary findings." *In re A.J.*, 386 N.C. 409, 410, 904 S.E.2d 707, 710 (2024) (citing *In re K.N.*, 373 N.C. 274, 284-85, 837 S.E.2d 861, 869 (2020)). Additionally, "[t]he trial court must clearly 'address whether respondent[s] [are] unfit as parent[s] or if [their] conduct has been inconsistent with [their] constitutionally protected status as . . . parent[s], should the trial court . . . consider granting custody or guardianship to a nonparent.'" *In re J.L.*, 264 N.C. App. 408, 419, 826 S.E.2d 258, 266 (2019) (quoting *In re K.L.*, 254 N.C. App. 269, 283, 802 S.E.2d 588, 597 (2017)). The trial court must apply the "clear and convincing" evidentiary standard in making this determination. *In re J.L.*, 264 N.C. App. at 419, 826 S.E.2d at 267.

VACATED AND REMANDED.

Chief Judge DILLON concurs. Judge STADING concurs in result only.

---

App. 301, 304, 798 S.E.2d 428, 430 (2017) (citations omitted). In the instant case, whether the trial court made the requisite determination is unclear at best.

Report per Rule 30(e).